654 F.2d 911
 UNITED STATES of America, Appellee,
v.
Thomas E. LONG, Richard Wolfe, David Aiken, Joseph Colucci
a/k/a Jose, Joseph Siegal, William Tignelia a/k/a Billy T.,
Carl Trop a/k/a Carly, Tim Dale Shafer a/k/a Timmy, David
Lantanzio a/k/a Jaime, Charles Stalnaker, Joseph Stellmack,
Homer Montoya Ospina, Thomas Miller a/k/a Tucker, Michael
Medjuck, Wayne Arrandale, Babriel Rodriguez Capa, Jimmy Lnu,
Anthony F. Bowe, Thomas J. George a/k/a T. J., a/k/a Thomas Quinn
Appeal of Movant LICHTER AND ARNKOFF, P. A.
 No. 80-2645.
 United States Court of Appeals,
Third Circuit.
 Argued March 24, 1981.
Decided June 30, 1981.
 
 Richard H. Martin (Argued), Baskin & Sears, Pittsburgh, Pa., for appellants Lichter and Arnkoff, P. A.
 Sandra D. Jordan (Argued), Robert J. Cindrich, Paul J. Brysh, Pittsburgh, Pa., for appellee.
 Before HUNTER, SLOVITER and WISDOM,* Circuit Judges.
 OPINION OF THE COURT
 HUNTER, Circuit Judge:
 
 
 1
 Thomas E. Long was indicted on May 25, 1980 for organizing and managing an illicit drug enterprise in violation of the Continuing Criminal Enterprise (CCE) statute. 21 U.S.C. §§ 848(a)-(d) (1976). Pursuant to the criminal forfeiture provisions contained in the CCE statute, the government moved for a restraining order to enjoin the transfer of an airplane owned allegedly by defendant Long. In addition, the government sought to establish an interim bond of $400,000 to secure the performance of the restraining order. These motions were granted ex parte and the case held over for a preliminary injunction hearing. The law firm of Lichter and Arnkoff, P. A., as registered title holders of the aircraft, contested the issuance of the restraining order and the bond. They argued that because Long transferred all his interest in the plane to them prior to his indictment, the plane was not subject to forfeiture and hence the restraining order should not be issued. After the preliminary injunction hearing the district court for the Western District of Pennsylvania upheld the bond and denied Lichter and Arnkoff's motion to dissolve the restraining order. Because the plane may well represent the profits of a continuing criminal enterprise and is therefore subject to criminal forfeiture under 21 U.S.C. § 848(a)(2)(A) (1976), we affirm the issuance of the restraining order.
 
 FACTS
 
 2
 The Drug Enforcement Agency (DEA) investigated defendant Thomas Long and his illicit drug ring for over two years. At the preliminary injunction hearing, DEA agent Chase testified that Long was a manager of an international drug smuggling enterprise that involved five or more individuals from late 1975 to the fall of 1979; that during this period, Long was not involved in any legitimate business, but rather obtained substantial profits from his illicit enterprise; and that with these proceeds Long purchased, among other things, the plane that is the subject of this proceeding: one Beechcraft Baron aircraft, 58 T.C., Serial No. T.K.-44.[1]
 
 
 3
 In the spring of 1979, Long became aware of a pending indictment against him in the Western District of Pennsylvania. He contacted his counsel, Irwin G. Lichter, about negotiating a surrender with the Justice Department. Lichter had represented Long on prior occasions and was a partner in the law firm of Lichter and Arnkoff, P. A., movants in this appeal. In these discussions, Lichter refused to represent Long unless he paid several debts for prior services. In addition, Lichter demanded a retainer for future expenses if he was to continue Long's representation. Long then offered to transfer title to his aircraft as consideration for past debts with the balance to serve as Lichter's retainer. Lichter accepted this payment plan in August of 1979.
 
 
 4
 The terms of their oral contract set the sale price of the plane at $140,000. In exchange for the plane, Lichter gave $31,000 in cash, via an unknown messenger, to Long. In addition, $30,000 of Long's unpaid legal debts were offset by Lichter and Arnkoff, P. A. Finally, $79,000 was credited to Long by Lichter as a retainer for his services in Long's upcoming criminal prosecution. This retainer included Lichter's fee, $50,000, and $29,000 to cover his future personal expenses.
 
 
 5
 On August 24, 1979, defendant Long executed a power of attorney in favor of Lichter and Arnkoff, P. A., for the express purpose of transferring title to the aircraft. In October of 1979, Lichter's partner, James Arnkoff, traveled to the Bahamas to transfer the plane's title.[2] On his first trip Arnkoff met with an individual named "Tony" at the Columbia Trust in the Bahamas. This individual purported to represent Long but refused to transfer title to the aircraft because Arnkoff had left the power of attorney in Florida. Arnkoff returned to Florida, picked up the power of attorney, and on the following day flew back to the Bahamas. He then presented the power of attorney to Tony and received the aircraft's bill of sale. On October 22, 1979, Lichter and Arnkoff, P. A. submitted the bill of sale to the Federal Aviation Administration and on January 8, 1980, registered the plane in the name of the law firm. Prior to the issuance of the restraining order, the law firm placed the plane for sale in several trade magazines.
 
 
 6
 A twenty-four count indictment was filed against Long and eighteen others on May 13, 1980. Count twenty-four of the indictment charged Long with intentional violation of the Continuing Criminal Enterprise statute, 21 U.S.C. § 848(a).[3]
 
 
 7
 On June 27, 1980, the government filed a motion for a restraining order, seeking to enjoin the defendant Long, and his attorneys, from assigning or transferring any rights in the subject aircraft. The government recommended that a $400,000 bond be set pursuant to the restraining order. The district court granted this motion ex parte and later denied Lichter and Arnkoff's motion to dissolve the preliminary injunction. Lichter and Arnkoff appeal.DISCUSSION
 
 
 8
 The district court's power to issue a restraining order in support of a criminal forfeiture is derived from the Continuing Criminal Enterprise statute which states in pertinent part:
 
 
 9
 The district courts of the United States (including courts in the territories or possessions of the United States having jurisdiction under subsection (a) of this section) shall have jurisdiction to enter such restraining orders or prohibitions, or to take such other actions, including the acceptance of satisfactory performance bonds, in connection with any property or other interest subject to forfeiture under this section, as they shall deem proper.
 
 21 U.S.C. § 848(d) (1976).[4]
 
 10
 As a criminal statute, section 848 "must be strictly construed, and any ambiguity must be resolved in favor of lenity." United States v. Enmons, 410 U.S. 396, 411, 93 S.Ct. 1007, 1015, 35 L.Ed.2d 379 (1973); See Bifulco v. United States, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980) (Principle of statutory construction known as the "rule of lenity" applies not only to the substantive ambit of criminal prohibitions, but also to the penalties they impose). This canon of statutory construction applies to forfeiture provisions and specifically those of section 848. Cf. United States v. Rubin, 559 F.2d 975, 991 (5th Cir. 1977), vacated and remanded on other grounds, 439 U.S. 810, 99 S.Ct. 67, 58 L.Ed.2d 102 (1978), 591 F.2d 278 (5th Cir.), cert. denied, 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979) (in personam forfeiture provisions of RICO subject to strict scrutiny). Even in light of this close scrutiny however, we hold the restraining order enjoining the transfer or sale of the plane to be valid.
 
 
 11
 Unlike the traditional in rem forfeiture proceedings against contraband or articles put to use in criminal activities, see, e. g., 21 U.S.C. § 881 (1976), the criminal forfeiture proceedings of sections 848(a)(2) are in personam. Cf. 18 U.S.C. § 1963 (1976) (the in personam criminal forfeiture provisions of RICO). As such, these provisions operate as an additional penalty against the defendant, requiring the forfeiture of all profits produced by the illegal enterprise along with any interest, property, claim or contractual rights that afford the defendant a source of influence over the enterprise.[5] See United States v. Grammatikos, 633 F.2d 1013, 1025 (2d Cir. 1980); United States v. Jeffers, 532 F.2d 1101, 1111 (7th Cir. 1976), aff'd in part and vacated in part on other grounds, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). By creating such a forfeiture procedure Congress intended to strip illicit drug rings of all profits and property, and thereby provide an additional deterrent to such activity.[6] See H.R.Rep.No.1444, 91st Cong., 2d Sess. reprinted in (1970) U.S.Code Cong. & Ad.News 4566, 4575-76; Jeffers, 532 F.2d at 1110-11.
 
 
 12
 To effectuate in personam forfeiture section 848(d) gives the district court the power to set appropriate bonds and to enter pre-conviction restraining orders that prohibit transfer of the property. These steps preserve the court's jurisdiction over the property and prevent the defendant from frustrating the effectiveness of the entire forfeiture procedure by disposing of the property before conviction. See L'Hoste, 609 F.2d at 811. Before a court can issue such a restraining order, however, the government must demonstrate that it is likely to convince a jury, beyond a reasonable doubt, of two things: one, that the defendant is guilty of violating the Continuing Criminal Enterprise statute and two, that the profits or properties at issue are subject to forfeiture under the provisions of section 848(a)(2). See 21 U.S.C. § 848(d). United States v. Mandel, 408 F.Supp. 679, 683 (D.Md.1976), aff'd in part and vacated on other grounds, 591 F.2d 1347 (4th Cir.), aff'd, 602 F.2d 653 (4th Cir. 1979) (en banc). In addition, these determinations must be made on the basis of a full hearing; the government cannot rely on indictments alone.
 
 
 13
 At the hearing below, Agent Chase testified that Long purchased the plane with the profits of his drug ring. Joint appendix at 244a. In addition, Chase emphasized that from 1975 to the fall of 1979 Long had no source of legitimate income. Id. at 243a. This testimony supports the district court's finding that the plane was subject to forfeiture under section 848(a)(2). In United States v. Mannino, 635 F.2d 110, 118 (2d Cir. 1980), the second circuit interpreted sections 848(a)(2) to authorize the forfeiture of defendant's house when the jury found that it was purchased with the proceeds of illegal drug enterprise. In the instant proceeding, the agent's testimony was enough to sustain the restraining order and performance bond; it demonstrated, beyond a reasonable doubt, the strength of the government's case against Long and that the plane purchased with the proceeds of the illegal enterprise was subject to criminal forfeiture.
 
 
 14
 Appellants respond that the in personam forfeiture of the plane constituted both a governmental taking without due process of law, and a denial of equal protection. These claims are without merit. At the present time the restraining order simply preserves the status quo pending Long's eventual trial and a final determination, pursuant to Federal Rule of Criminal Procedure 31(e), of whether the plane will be forfeited.[7] Further, the restraining order was issued only after a full hearing in which the government demonstrated that it was likely to convince a jury beyond a reasonable doubt that the plane is subject to forfeiture. Therefore appellants' due process and equal protection claim are without merit. See Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 676-80, 94 S.Ct. 2080, 2088-90, 40 L.Ed.2d 452 (1973); United States v. Scalzitti, 408 F.Supp. 1014, 1015 (W.D.Pa.1975), appeal dismissed, 556 F.2d 569 (3d Cir. 1979).[8]
 
 
 15
 Finally, appellant contends that the criminal forfeiture of section 848(a) (2) cannot operate against a third party who, although presently holding the aircraft, was neither indicted nor connected to the illicit enterprise in any way. Indeed, appellant argues the restraining order is particularly egregious in this case because the transfer of Long's plane occurred more than six months before Long was indicted on drug smuggling charges. Hence, appellant concludes, it is beyond the reach of section 848 forfeiture and therefore the restraining order and bond should be vacated.
 
 
 16
 The crux of appellant's contention is that criminal forfeiture can apply only to profits or properties owned by the defendant at the time the restraining order is issued. In other words, if a defendant has illegal profits that would otherwise be subject to criminal forfeiture, he can defeat such forfeiture by transferring the illicit proceeds to a non-indicted third party. Once in the third party's hands, the government would be powerless to proceed against the assets by in personam forfeiture. We disagree both with this theory of criminal forfeiture under section 848 and with appellant's attempted application of it to the facts of this case.
 
 
 17
 We begin by noting that there is a paucity of law on the limits of the government's power to effectuate in personam forfeitures under section 848. The crucial question, unanswered by the case law, is whether the government's forfeiture power will support a restraining order that prohibits third parties from transferring assets purchased solely with the profits from illicit drug trafficking. We hold that in the circumstances of this case the government can prevent the transfer of such property.
 
 
 18
 In the traditional in rem proceeding, the government may garnish tainted property even though it is presently in the possession of innocent third parties who purchased it in good faith. See Ivers v. United States, 581 F.2d 1362, 1367 (9th Cir. 1978) citing United States v. Stowell, 133 U.S. 1, 10, 16-17, 10 S.Ct. 244, 247, 33 L.Ed. 555 (1890). Such forfeiture is permitted because it operates against the property itself rather than against the owner.[9] Calero-Toledo, 416 U.S. 663, 684, 94 S.Ct. 2080, 2092, 40 L.Ed.2d 452 (1973), quoting The Palmyra, 12 Wheat 1, 14-16, 6 L.Ed. 531 (1827).
 
 
 19
 Conversely, in personam forfeiture does not technically operate against the property itself; rather it acts as an additional penalty against the defendant. Congress created the criminal forfeiture of section 848 to serve as an additional deterrent to narcotics trafficking by seeking to deprive a defendant of any profits realized through his drug enterprise. We believe that these punitive purposes should not be frustrated by allowing a defendant to transfer the illegal proceeds to a knowing third party. If a defendant may avoid a forfeiture by such a transfer, the forfeiture provisions of section 848 would be illusory. A defendant could escape the penalty sought to be imposed by Congress simply by transferring his illgotten profits to a non-indicted third party.
 
 
 20
 In this case the court concluded that the government demonstrated that the plane would be subject to forfeiture under section 848. Lichter knew that Long was about to be indicted in connection with the government's claim that Long was running an international drug smuggling ring. Indeed, several months before the sale of the aircraft, Long approached Lichter about a possible negotiated surrender with the Justice Department. Lichter then wrote the United States Attorney in the Western District of Pennsylvania requesting a meeting to discuss the pending charges and the possibility of obtaining a reasonable bond. Appendix at 178a. In addition, the terms of the sale, including the requirement that it take place in the Bahamas, provided sufficient indication that the plane was potentially subject to forfeiture. Under these circumstances, two attorneys, experienced in criminal law, cannot be said to have purchased the plane without notice of any outstanding claims against the goods.
 
 
 21
 Because we hold the plane to be forfeitable under section 848(a)(2)(A), and that the government may proceed against these non-indicted third parties, the district court's judgment, denying appellants' motion to dismiss the restraining order and bond, will be affirmed.
 
 
 
 *
 Honorable John M. Wisdom, United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 Several other articles of property are the subject of restraining orders and bonds. They included a 65 foot yacht, another single engine airplane, three cars, a boat trailer, and the proceeds from three bank accounts. Joint Appendix, 59a-60a
 
 
 [2]
 Long demanded that the transfer of title take place in the Bahamas. The title was obtained from Circleville Holdings Inc., a Florida corporation allegedly controlled by Long. Joint Appendix, 177a-78a
 
 
 [3]
 Long and eight co-defendants have departed for parts unknown and are presently fugitives. Eight other co-defendants pled guilty to the indictment that named Long the manager of an illicit drug enterprise. They were sentenced in the Western District of Pennsylvania, on March 2, 1981. One defendant was acquitted of all charges in a non-jury trial and the final defendant was found guilty by a jury and sentenced on March 2, 1981. United States v. Long, et al., 88 F.R.D. 701 (W.D.Pa.1981) (Ziegler, J.)
 
 
 [4]
 The relevant substantive subsections of section 848 state:
 848(a)(1) Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 10 years and which may be up to life imprisonment, to a fine of not more than $100,000, and to the forfeiture prescribed in paragraph (2); except that if any person engages in such activity after one or more prior convictions of him under this section have become final, he shall be sentenced to a term of imprisonment, to a fine of not more than $200,000, and to the forfeiture prescribed in paragraph (2).
 848(b) For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if
 (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and
 (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter
 (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
 (B) from which such person obtains substantial income or resources.
 
 
 [5]
 The scope of criminal forfeiture under section 848(a)(2) is:
 (2) Any person who is convicted under paragraph (1) of engaging in a continuing criminal enterprise shall forfeit to the United States
 (A) the profits obtained by him in such enterprise, and
 (B) any of his interest in, claim against, or property or contractual rights of any kind affording a source of influence over, such enterprise.
 21 U.S.C. § 848(a)(2) (1976).
 Unlike the traditional in rem forfeiture of all equipment used in the actual drug enterprise, in personam forfeiture under section 848 requires only that the property be purchased with the profits of the enterprise or at least represent an interest in the enterprise.
 
 
 [6]
 The government argued at the hearing below that the criminal forfeiture provisions of 848(a)(2) are identical in scope and purpose to those of the RICO statute. Joint Appendix at 126a. Compare 18 U.S.C. § 1963(a) (1976) with 21 U.S.C. § 848(a)(2). While these forfeiture provisions are similar, they are by no means equal in scope; the in personam forfeiture of CCE covers all the profits earned from any continuing criminal enterprises. RICO, conversely, requires the defendant to forfeit only his personal interest in the tainted enterprise. See United States v. L'Hoste, 609 F.2d 796, 811-12 (5th Cir.), petition for rehearing denied, 615 F.2d 383 (5th Cir. 1980); United States v. Meyers, 432 F.Supp. 456, 461 (W.D.Pa.1977)
 
 
 [7]
 Rule 31(e) of the Federal Rules of Criminal Procedure provides:
 If the indictment or the information alleges that an interest or property is subject to criminal forfeiture, a special verdict shall be returned as to the extent of the interest or property subject to forfeiture, if any.
 Fed.R.Crim.Proc. 31(e).
 
 
 [8]
 Nor does the in personam criminal forfeiture procedure strip a defendant of his presumption of innocence as one lower court has intimated. See United States v. Mandel, 408 F.Supp. at 682-84. An order restraining the transfer of property, that may be subject to forfeiture, does not taint a defendant's presumption of innocence in violation of the Constitution. As the Supreme Court stated in Bell v. Wolfish, 441 U.S. 520, 533, 99 S.Ct. 1861, 1870, 60 L.Ed.2d 447 (1979): "The presumption of innocence is a doctrine that allocates the burden of proof in criminal trials; it has no application to a determination of the rights of a pre-trial detainee." See also United States v. Bello, 470 F.Supp. 723, 724 (S.D.Cal.1979); Scalzitti, 408 F.Supp. at 1014-15
 
 
 [9]
 Specifically, under the traditional in rem proceeding, the government's right to property vests at the moment the property is used illegally. When forfeiture is sought the government's right relates back to that time and avoids all intermediate sales. See Simons v. United States, 541 F.2d 1351, 1352 (9th Cir. 1976)