UNITED STATES of America, Plaintiff,

v.

Daniel VEON aka Danny Veon aka Daniel Dee Veon aka Daniel Martin; Mark Egan; Patrick Egan aka Patrick Luke; Gary Collins; Terri Egan aka Terry Ballard aka Terri Toth; John Joseph Egan; Rickey Brooks; Charles Harville; Roy Garrison; Norina Egan; Jean Brennan; Darlene Egan aka Dee Egan; Leroy Egan; Gloria Steppins, Defendants.

No. CR. S–81–172A–LKK.

United States District Court, E. D. California.

April 23, 1982.

As Corrected April 29, 1982.

Donald B. Ayer, U. S. Atty., Kenneth G. Peterson, Asst. U. S. Atty., Sacramento, Cal., for U. S.

Howard Hertz, Berkeley, Cal., for Ricky Brooks.

Michael Stepanian, San Francisco, Cal., for Mark Egan.

William Osterhoudt, San Francisco, Cal., for Patrick Egan.

Andre La Borde, San Francisco, Cal., for Terri Egan.

Nancy Roscoe, San Francisco, Cal., for John Joseph Egan.

James A. Brennan, Sacramento, Cal., for Daniel R. Garrison.

Les N. Harrison, Oakland, Cal., for Gary Collins.

Donald Dorfman, Sacramento, Cal., for Charles Harville.

Richard P. Duane, Berkeley, Cal., for Rodney Glemaker.

Christopher Wing, Sacramento, Cal., for Jean Brennan.

John M. Youngquist, San Francisco, Cal., Barry Tarlow, Los Angeles, Cal., for Daniel Veon.

Michael S. Sands and Fern M. Laethem, Sacramento, Cal., for Melvin Laub.

Michael J. Oliver, Pleasant Hill, Cal., for Darlene (Dee) Egan.

Arthur Ruthenbeck, Sacramento, Cal., for John K. Egan.

Gilbert Eisenberg, San Francisco, Cal., for Norina Egan.

J. Toney, Woodland, Cal., for Roy Garrison.

## OPINION AND ORDER

KARLTON, District Judge.

■ In 1970 Congress adopted two criminal statutes. One, the Controlled Substances Act (Title II of Pub.L. 91–513, Oct. 27, 1970) contained a provision directed to continuing criminal enterprises and is commonly known by the initials CCE (21 U.S.C. § 848). The other sought to combat organized crime (Title IX of Pub.L. 91–452, Oct. 15, 1970) and is commonly known as RICO. Both statutes carry a feature rare in American law—namely, a criminal forfeiture of property provision (the CCE provision for forfeiture is codified at 21 U.S.C. § 848(a)(2); RICO's provision is codified at 18 U.S.C. § 1963(a)). In each statute Congress also provided the district courts with jurisdiction to enter restraining orders in connection with property subject to such forfeiture. (See 21 U.S.C. § 848(d) (CCE); 18 U.S.C. § 1963(b) (RICO)). Until recently these provisions were rarely used. (See Report of the Comptroller General of the United States, "Asset Forfeiture—Seldom Used Tool in Combating Drug Trafficking" (April 10, 1981) (hereinafter Report of the Comptroller General)). Accordingly, there is little guidance as to how and under what circumstances such orders are granted. This opinion addresses the issue of what procedures and standards are applicable to the issuance of a restraining order in connection with the CCE. I here explain that although an ex parte order briefly restraining the transfer of property may issue initially, it may not be continued until trial unless the Government proves, at an adversary hearing governed by the rules of evidence, by a preponderance of the evidence that it is likely to prove at trial that the defendant is guilty of a violation of the statute and that the property is subject to forfeiture. Before explaining my reasons for so holding, I will trace the procedural history of the case at bar.

On September 25, 1981, the grand jury of this district indicted Daniel Veon and 18 others, alleging possession of a controlled substance with intent to distribute, possession, and conspiracy. It also in effect alleged that the defendant Veon was the so-called "kingpin" (see United States v. Sperling, 506 F.2d 1323, 1344 (2d Cir. 1974), cert. denied, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975)) of a continuing criminal conspiracy (CCE) pursuant to and in violation of 21 U.S.C. § 848. In connection with the latter allegation the indictment alleged that certain real and personal property owned by the defendant was subject to criminal forfeiture pursuant to the provisions of 21 U.S.C. § 848(a)(2)(A) & (B).

On October 2, 1981, the Assistant United States Attorney prosecuting the matter and the DEA case agent appeared in Chambers for the purpose of obtaining an order restraining defendant Veon's transfer of certain interests in substantial real property pursuant to the provisions of 21 U.S.C. § 848(d).

In its ex parte presentation, the United States relied upon certain reports of investigating agents for the IRS, and the DEA. The court issued a restraining order and, on October 6, 1981, issued an order setting the matter for a hearing on October 20, 1981. In the order setting the latter hearing the court suggested that it would treat the ex parte order issued on October 2 as an order akin to a temporary restraining order pursuant to Fed.R.Civ.P. 65 and any order issued subsequent to the upcoming hearing as an order akin to a preliminary injunction

under the same rule. *See, in general, United States v. Mandel,* 408 F.Supp. 679, 682 (D.C.Md.1976) (In considering whether a restraining order should issue pursuant to the provisions of 18 U.S.C. § 1963(b), the rules developed for civil injunctions "may provide some guidance as to the minimal requirements for the entry of a preconviction order in a criminal case.").

On October 15, 1981, a first superseding indictment was returned by the grand jury. Although a hearing in this matter was held on October 20, the merits of the restraining order were not considered or reached. At that hearing it became apparent that the Government and defendant were in substantial disagreement as to both the procedure and standards applicable to any hearing relative to continuing the ex parte restraining order.

The court held a status conference on October 30, 1981, in which it considered various matters concerning the case. Because of the unsettled questions regarding the restraining order, the court determined to have a two part proceeding. First, there would be a hearing on January 13, 1982, for the purpose of considering the appropriate procedure applicable to the hearing, *e.g.,* who bore the burden of proof, what the burden of proof was, and what elements would be required to be proved. Upon disposition of that motion, an evidentiary hearing would be held.

Due to the illness of the Assistant United States Attorney in charge of the case, and the anticipated filing of a second superseding indictment in late March, the United States requested and defense counsel agreed that the procedural hearing should be continued until March 5, 1982. The continuance was granted and a briefing schedule was established. The anticipated second superseding indictment was in fact returned by the grand jury on March 18, 1982.[1]

The hearing to settle the applicable procedure was held. As that hearing demonstrated, the questions tendered are unsettled and complex. Moreover, because of the historical rarity of a criminal forfeiture proceeding in this country and the relative infrequency of the use of the forfeiture provisions provided by the CCE, little precedent is available to guide the court. I now briefly consider the prior history of forfeitures.

Since at least 1790 this country has banned the use of a criminal forfeiture. *See* 18 U.S.C. § 3563. Prior to the adoption of the CCE and RICO, this history of a refusal to countenance a criminal forfeiture statute was deviated from only once. In 1862 Congress passed the Confiscation Act which authorized the President to forfeit the property of Confederate sympathizers. *See* Report of Comptroller General at p. 4. President Lincoln was in doubt as to the statute's constitutionality. *See* Maxeiner, *Bane of American Forfeiture Law—Banished at Last?,* 62 Cornell L.Rev. 768, 787 n.109 (April, 1977) (hereinafter Maxeiner). The statute was ultimately upheld by the Supreme Court, not on any theory that criminal forfeitures were generally constitutional, but because the particular statute in issue was considered as constitutionally permitted by virtue of its origin in the War Powers. *See Tyler v. Defrees,* 78 U.S. (11 Wall) 331, 20 L.Ed. 161 (1871); *Miller v. United States,* 78 U.S. (11 Wall) 268, 20 L.Ed. 135 (1871); *McVeigh v. United States,* 78 U.S. (11 Wall) 259, 20 L.Ed. 80 (1871). Since no such claim can be made for the CCE statutes, the Confiscation Act cases can hardly be viewed as providing guidance in the instant action.

■ Only one other source of forfeiture has been recognized in this country, the so-called civil forfeitures initially emanating from the admiralty law. *See Maxeiner, supra,* and *see also* Kandaras, *Due Process and Federal Property Forfeiture Statutes:*

---

**1.** In fact the court is now faced with two indictments; one charging essentially the same violations as appeared in the initial indictment and a second indictment charging defendant Veon and another with various other violations including 31 U.S.C. § 1101, 31 U.S.C. § 1059, and 26 U.S.C. § 7201.

*The Need for Immediate Post Seizure Hearing,* 34 Southwestern L.J. 925 (1980) (hereinafter Kandaras). Whatever else is true, it is absolutely clear that it was the intent of Congress in 21 U.S.C. § 848 to create a criminal forfeiture statute wholly distinguished from the forfeitures permitted under the civil law. *See United States v. Long,* 654 F.2d 911, 914 (3d Cir. 1981); *see also United States v. Mandel,* 408 F.Supp. at 682; Notes of the Advisory Committee on the Federal Rules to the 1972 Amendment to Fed.R.Crim.P. Rule 54.

 The distinguishing characteristic of a criminal forfeiture provision is that, unlike the in rem character of civil forfeiture (*see The Palmyra,* 25 U.S. (12 Wheat 1) 14, 6 L.Ed. 531 (1827)), the personal guilt of the defendant is at issue. *See United States v. Long,* 654 F.2d at 914; *United States v. Mandel,* 408 F.Supp. at 682; *see also Kandaras, supra* and *Maxeiner, supra.* That is to say, given the in rem character of civil forfeiture "questions relating to the culpability of the owner of the goods were simply not an issue. It was the goods which were proceeded against, not the owner." 8A Moore, *Federal Practice and Procedure,* Rules of Crim.Proc. ¶ 32.10, p. 32–155 (1965).[2] The theory of criminal forfeiture is, of course, wholly different inasmuch "as they 'are in personam.' [citations omitted] As such these provisions operate as an additional penalty against the defendant ..." *United States v. Long,* 654 F.2d at 914; *see also* Report of the Comptroller General, *supra* at p. 5. As such the CCE necessarily implicates the constitutional standards applicable to the criminal justice system, requiring proof of guilt prior to forfeiture. These distinctions make resort to civil forfeiture cases as guidance in criminal forfeiture cases, highly dubious to say the least of it.

 I thus concur with the general judgment of the scholars who have considered the issue, that in the CCE and RICO Congress embarked on a new course requiring the development of its own body of jurisprudence. *See Maxeiner, supra* and *Kandaras, supra.* Because of the distinct differences of the character of criminal and civil procedures, I conclude that the civil cases and the Confiscation Act cases provide no guidance to resolution of the questions relating to how the restraining orders and forfeiture provisions of the two criminal statutes are to be implemented. Moreover, as I have observed, because of the relatively rare use in the forfeiture provisions of the CCE and RICO very few reported cases address the question of the procedures applicable to restraining orders and forfeitures. Unfortunately, in general these cases tend to be relatively laconic. Although I will, of course, look to these cases for whatever guidance they provide, ultimately I set out on an uncharted course.

As I indicated in tracing the procedural history of the instant case, the court issued an ex parte restraining order. Although the defendant does not in this case challenge that ex parte order, it appears appropriate to consider whether that order was proper. I turn to that question.

I

## MAY THE COURT ISSUE AN EX PARTE RESTRAINING ORDER?

 The text of the statute in question is both brief and unenlightening. It simply provides:

The district courts of the United States ... shall have jurisdiction to enter such restraining orders or prohibitions, or to take such other actions, including the acceptance of satisfactory performance bonds, in connection with any property or other interests subject to forfeiture under this section, as they shall deem proper.

21 U.S.C. § 848(d). Although this court has been unable to find any relevant congres-

---

**2.** Indeed it is this historic characterization which permits admiralty forfeitures, and civil forfeitures in general, to escape the stricture of the due process provisions of the fifth amendment. *See and compare Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) with *United States v. One 1971 Ford Truck,* 346 F.Supp. 613, 617– 19 (D.C.C.D.Cal.1972); *and see Maxeiner, supra* and *Kandaras, supra.*

sional history as to this provision, Congress explained that the purpose of the cognate provision in RICO was "to prevent preconviction transfers of property to defeat the purpose of the new chapter." H.R.Rep.No. 91–1549, 91st Cong., 2d Session 57, reprinted in [1970] U.S.Code Cong. & Admin.News, pp. 4007, 4033; *see also United States v. L'Hoste*, 609 F.2d 796, 811 (5th Cir.) *cert. denied*, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980). Upon the issuing of the indictment, a criminal defendant will have notice of the intent of the Government to seek forfeiture of specifically identified property. *See* Fed.R.Crim.P. 7(c)(2). Accordingly, in the absence of an ex parte order, it is at least legitimate to fear that some defendants would seek to transfer their interest in property which they know may be subject to forfeiture. *See United States v. L'Hoste, supra; United States v. Long, supra.* Under the circumstances, it appears to the court that in appropriate cases an ex parte restraining order may be necessary to preserve the court's jurisdiction and implement the intent of Congress. I thus conclude that in an appropriate case such an order may issue. For the reasons which I explore below, however, the court holds that such a restraining order must be of brief duration and must be followed by an adversary hearing concerning the propriety of continuing the restraining order until trial.

## II

## THE NECESSITY OF AN ADVERSARY HEARING

■ Although, as I have noted, the statute itself is silent as to what procedures are applicable to the issuance of a restraining order, it literally breathes the spirit of discretion. *See United States v. L'Hoste*, 609

F.2d at 811. It does not follow, however, that by virtue of the discretionary character of the decision no procedures or standards are applicable. On the contrary, the court must develop some mechanism for consideration and exercise of the statutory grant of discretion.[3]

Various considerations convince me that an adversary hearing is required prior to a continuation of the restraining order pursuant to § 848. Those considerations include application of two standard forms of statutory construction: the so-called principle of lenity and the principle that one is to construe a statute to avoid constitutional questions if possible. Finally, considerations of precedent also counsel such a hearing.

The question is properly posed, at least initially, as one of statutory construction, *i.e.*, what procedure did Congress intend when it reposed jurisdiction in the district courts to restrain criminal defendants from transferring their interest in forfeitable property.

■ As with any issue of statutory construction, consideration "begins, as indeed it must, with the text and legislative history . . ." *Busic v. United States*, 446 U.S. 398, 405, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980). Unfortunately, the language of 21 U.S.C. § 848(d) provides no guidance whatsoever. It is now recognized that where the text fails to address the issue pertinent to decision an ambiguity exists. *See Busic v. United States*, 446 U.S. at 407, 100 S.Ct. at 1753. I now turn to various sources in aid of resolution of the ambiguity.

I first turn to the legislative history. The parties have not provided the court, nor has the court's own independent research discovered any legislative history which addresses the issue. In this regard, the Senate Report on the legislation says no more

---

**3.** In connection with another issue in this case the court observed that discretionary decisions are not the equivalent of standardless decisions. To reiterate, "discretion" imparts notions of individualized, not standardless, decision-making. While because of the very limited appellate review of a trial court's discretionary decisions, such decisions are sometimes confused with those which are ex gratia—they

are not. A judicial exercise of discretion is ex consulto. That is, it should be an informed decision, reached after consultation and in conformance with the general principles of applicable law. "Discretion, however, must be exercised within such limits as the applicable law prescribes." *Pue v. Sillas*, 632 F.2d 74, 78 (9th Cir. 1980).

than "subsection (e) of this section confers jurisdiction on the district courts of the United States to take such actions as may be necessary and appropriate in connection with any property or other interest subject to forfeiture under this section." Report of the Committee of the Judiciary U.S. Senate to accompany S.3246 at p. 28 (Dec. 16, 1969). Senate Report of the 91st Congress First Session Report No. 91–613). Nor does reference to statutes in pari materia aid in resolution of the issue. The RICO provision, 18 U.S.C. § 1963(b) provides jurisdiction to the district court in almost identical language.[4]

Thus, in the absence of any other guidance I turn to standard canons of statutory construction. Two such canons appear applicable and relevant. The first of these is the principle of lenity.[5]

■ It is an ancient principle of our law that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971), *quoting Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971); *see also Busic v. United States*, 446 U.S. at 406, 100 S.Ct. at 1752. *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980); *United States v. Long*, 654 F.2d at 914 (extending the principle of statutory construction to forfeiture procedures) *and see*

*United States v. Rubin, vacated and remanded on other grounds*, 439 U.S. 810, 99 S.Ct. 67, 58 L.Ed.2d 102 (1978); *on remand* 591 F.2d 278 (5th Cir.), *cert. denied*, 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979) (in personam forfeiture provisions of RICO subject to strict scrutiny).

■ Once the principle of lenity is found to be applicable, it applies not only to the ambit of the statute, *see, e.g., United States v. Bass, supra*, the penalties imposed, *see Bifulco v. United States, supra*, but also the procedures applicable. *See United States v. Long, supra.* As the. *Long* court noted, application of the principle of lenity in this context requires that the statute be read to provide an adversary hearing. *United States v. Long*, 654 F.2d at 914–15.

Moreover, a reading of the statute permitting a restraining order without an adversary hearing would raise grave constitutional questions. Relying on cases such as *Sniadach v. Family Finance Corporation*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the defendant argues that the statute, since it does not provide for a hearing, is unconstitutional. *See also North Georgia Finishing Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 607, 95 S.Ct. 719, 722, 42 L.Ed.2d 751 (1975).[6] I need not resolve the issue. Having determined that defendant has made a creditable argument that a constitutionally cognizable property interest is implicated

---

4. The Government does not argue here that by virtue of 21 U.S.C. § 881, the restraining orders are governed by the Supplemental Rules of Admiralty. The court has independently considered that possibility and I have rejected it. As I explained above, those rules were developed in connection with in rem civil proceedings and thus are simply illsuited for the governance of the instant case. Indeed, employing in rem procedure for a criminal proceeding would raise substantial constitutional questions. These considerations appear to lead inevitably to the conclusion that, as the Comptroller General expressed it, 21 U.S.C. § 881 is the embodiment of "[t]he Drug Enforcement Administration's civil forfeiture authority...." Report of the Comptroller General at p. 5. *See also United States v. Long*, 654 F.2d 911, 914 (3d Cir. 1981) (characterizing 21 U.S.C. § 881 as governing in rem forfeitures).

5. It has recently been observed that "[l]enity ... serves only as an aid for resolving ambiguity; it is not to be used to beget one. The rule comes into operation 'at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers.' [citation omitted]." *Albernaz v. United States*, 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275, 284 (1981). Whatever hierarchy of aids in resolution of congressional intent exist, given the paucity of other sources it cannot be doubted that the employment of canons of construction are appropriate under the circumstances of this case.

6. The defendant's counsel in this case has persuasively made a similar argument concerning RICO. *See* Tarlow, *RICO, the New Darling of Prosecutor's Nursery*, 49 Fordham L.Rev. 167, 299 et seq. (Nov. 1980).

by the "freezing" of property interest (*see* *Sniadach* and *North Georgia, supra*) thus potentially raising due process issues, I am obligated to construe the statute so as to avoid resolution of those issues. *See Rosenberg v. Fleuti*, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963). This can be readily accomplished by finding that implicit in the statutory scheme is a requirement for a timely adversary hearing.

Finally, considerations of precedent counsel that such a hearing is required. In *United States v. Long, supra*, the circuit court reached that conclusion. In *Long* the district court had issued an ex parte restraining order and, after a hearing, continued the order pending trial. The court held that prior to continuing the restraining order the district court is required to make certain findings (*see* Section III B, below). The court then held that "[t]hese determinations must be made on the basis of a full hearing; the government cannot rely on indictments alone." *United States v. Long*, 654 F.2d at 915. Although the Ninth Circuit has yet to rule on the issue, for the reasons enunciated above I believe *Long* should be followed.

I thus conclude that although an ex parte order may issue which temporarily restrains defendants' freedom to transfer title, before such a restraint may continue until trial, an adversary hearing is required.[7] I now turn to the complex question of the requisites of such a hearing.

### III

### THE REQUISITES OF AN ADVERSARY HEARING

Having concluded that a hearing is required, it becomes necessary to determine the nature of such a hearing. The parties are in substantial dispute as to this issue. In essence, the Government contends that a hearing akin to a bail motion, resting on hearsay and argument of counsel, is all that is required. Defendant contends a full blown trial is mandated. The court believes that general characterizations will not aid in resolution of the issues and that what is required is consideration of each distinct element of a hearing. I turn to that task.

#### A. Burden of Proof

The first issue presented is, who bears the burden of proof at the adversary hearing?[8]

All of the cases which have addressed the question of the nature of a hearing relating to such restraining orders have either implicitly or explicitly assumed that the Government bears the burden of proof. *See United States v. Long*, 654 F.2d at 915 ("Further, the restraining order was issued only after a full hearing in which the government demonstrated that it was likely to convince a jury beyond a reasonable doubt that the plane is subject to forfeiture."). *United States v. Bello*, 470 F.Supp. 723, 724 (D.C.S.D.Cal.1979) ("The government has made a sufficient showing that the restraining order is necessary."; *United States v. Mandel*, 408 F.Supp. 679, 683 (D.C. D.Md.1976) ("In the instant case this standard would seem to require the government to demonstrate that it is likely to convince a jury beyond a reasonable doubt, [etc.]". This uniform determination is wholly understandable.

The general rule is that the proponent of a motion bears the burden of

---

**7.** Because I have determined that avoidance of the constitutional issue of whether due process requires such a hearing is proper and feasible, I need not consider this question under the familiar rubric of *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) (once it is determined that due process applies, the question remains what process is due). Accordingly, I need not engage in the particular analysis *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) mandates as appropriate for resolution of the constitutional

question. Nonetheless, I am satisfied that such an analysis would lead to essentially the same conclusion that the court reaches on a non-constitutional basis.

**8.** The court uses this phrase in both of its accepted legal senses, *i.e.*, the burden of initially producing evidence and the risk of non-persuasion as to any contested issue of fact. *See generally, Kouba v. Allstate Ins. Co.*, 523 F.Supp. 148 (D.C.E.D.Cal.1981).

proof. *See* 6 Orfield, *Criminal Procedure Under the Federal Rules* § 47.9 at p. 319 (1967), *and see Kouba v. Allstate Ins. Co.*, 523 F.Supp. 148 (D.C.E.D.Cal.1981). This rule is generally applied to motions for injunctive relief.[9]

■ Moreover, of course, the purpose of the order sought is to change the status quo. Such orders are routinely viewed with hesitancy and carry a heavy burden of persuasion.[10]

■ I thus conclude that the United States bears the burden of proof.[11]

### B. *What Must be Proven?*

■ Insofar as the court and counsel can discover, only one case, *United States v. Long*, 654 F.2d 911, deals directly with the elements which must be proven by the Government to support a restraining order in a CCE case. One other case, *United States v. Mandel*, 408 F.Supp. 679 (D.C.E.D. Md.1976), has addressed the cognate RICO provisions. Finally, from what the court did in *United States v. Bello*, 470 F.Supp. 723 (D.C.S.D.Cal.1979), an inference may be drawn as to that court's opinion of the applicable standard. Although the cases speak in diverse terms, the mode of analysis appears consistent. To a greater or lesser degree each case either directly or implicitly suggests that it is appropriate to examine the standards utilized by the courts in determining the propriety of granting a preliminary injunction under Rule 65.[12] It may well be that the courts have looked to the familiar rules of civil procedure because no other standards have been suggested. In any event, in the absence of any other guidance I adopt that mode of analysis. In doing so I arrive at the conclusion that the court in *Long* correctly enumerated the elements which the Government must prove. Accordingly, I adopt the following standard:

> Before a court can issue a restraining order, however, the government must demonstrate that it is likely to convince a jury, beyond a reasonable doubt of two things: one, that the defendant is guilty of violating the Continuing Criminal Enterprise statute and two, that the profits or properties at issue are subject to forfeiture under the provisions of section 848(a)(2).

*United States v. Long*, 654 F.2d at 915.

It is important here to pause to recognize that while the above stated standard is what the Government must prove, it does not itself embody the standard of proof, *i.e.*, the degree to which a court must be persuaded.[13]

---

9. Thus in a civil context "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant by a clear showing carries the burden of persuasion." 11 Wright & Miller, *Federal Practice and Procedure* § 2948 at pp. 428–29 (1973).

10. Although the court, by issuing an ex parte order, may have temporarily altered the status quo, it seems clear that the appropriate focus is on the status quo ante litem. *See Wright & Miller, supra.*

11. This finding is consistent with those cases which have considered the matter as a question of due process. *See, e.g., Commissioner v. Shapiro*, 424 U.S. 614, 629, 96 S.Ct. 1062, 1071, 47 L.Ed.2d 278 (1976); *see also North Georgia Finishing Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 607, 95 S.Ct. 719, 722, 42 L.Ed.2d 751 (1975) (holding a statute permitting restraint of property unconstitutional because the statute contains "no provision for an early hearing at which the creditor would be required to demonstrate at least probable cause for the garnishment.").

12. The reasons for applying this standard are never clearly articulated. I note in passing that Fed.R.Crim.P. 54(b)(5) provides that the Federal Rules of Criminal Procedure do not apply to "civil forfeiture of property." thus implying that they do apply to criminal forfeitures. (*See* Notes of Advisory Committee on Rules to Rule 54(b)(5) for the 1972 amendment in which the Committee explained "in subdivision (b)(5) the word 'civil' is added before the word 'forfeiture' to make clear that the rules *do* apply to criminal forfeitures. This is clearly the intention of Congress." (original emphasis)). Unfortunately, Congress' intent as to the instant issue has been frustrated since no rule governing restraining orders prior to trial has been adopted.

13. This caution appears appropriate since at least one court has apparently confused what must be proved with the degree of persuasion.

## C. The Standard of Proof.

In general, three levels of proof have been recognized in our law; by a preponderance of the evidence, beyond a reasonable doubt and, an intermediate level "clear and convincing evidence." *See in general, Santosky v. Kramer,* —— U.S. ——, —— ——, 102 S.Ct. 1388, 1395–96, 71 L.Ed.2d 599.

▇▇▇ No case appears to directly address the issue of what degree of proof is required before a restraining order pursuant to § 848 may issue. Thus, the court in *United States v. Long,* 654 F.2d at 915 did not determine what standard of proof applied although it did opine that the government "demonstrated, beyond a reasonable doubt, the strength of the government's case against Long. . . ." *Id.*[14]

The two district court cases are equally unenlightening. In *United States v. Mandel, supra,* the court observed that the standard it adopted did not require the government to meet "a specific burden of proof, such as 'preponderance of the evidence,'" 408 F.Supp. 679, 682 (D.C.Md.1976). Finally, the last reported case fails to address the issue at all. *United States v. Bello,* 470 F.Supp. 723 (D.C.S.D.Cal.1979). In that case, however, the court apparently relied on no more than the existence of an indictment to support its order, a standard rejected by both this court and the Third Circuit in *Long.*

See *United States v. Mandel,* 408 F.Supp. at 682–83.

**14.** The above observation must be no more than hyperbole. As will be seen in section III–D, *infra,* it may be that the district court in *Long* had no more than hearsay before it. Although hearsay may bear sufficient indicia of reliability under certain circumstances to support a finding (*see Calhoun v. Bailar,* 626 F.2d 145 (9th Cir. 1980), *cert. denied,* 452 U.S. 906, 101 S.Ct. 3033, 69 L.Ed.2d 407 (1981), I can hardly believe that anybody would be convinced beyond a reasonable doubt by mere hearsay.

**15.** The Court has taught that "the degree of proof required in a particular type of proceeding 'is the kind of question which has traditionally been left to the judiciary to resolve.' [citation omitted]." *Santosky v. Kramer,* —— U.S. at ——, 102 S.Ct. 1395.

In the absence of any guidance, and particularly in light of Congress' silence, the only manner of proceeding to analyze this issue is by the application of due process standards for fundamental fairness in the selection of the applicable burden of proof. See *Santosky v. Kramer,* —— U.S. ——, 102 S.Ct. 1388, 71 L.Ed.2d 599.[15] In *Santosky* the Supreme Court taught that the appropriate method of analysis requires consideration of the three factors specified in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). That is, the court is to consider "the private interests affected by the proceeding; the risk of error created by the state's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." *Santosky v. Kramer,* —— U.S. at ——, 102 S.Ct. at 1395.

▇▇ I begin in accordance with the mandated procedure by examining the private interests affected by the proceeding. Essentially, defendants' interest appears to be no more than in maintaining his right to transfer his property pending a jury determination. It would thus appear that only a minimum standard of proof is suggested, and undoubtedly application of a "preponderance of the evidence" standard would be more than constitutionally sufficient. See *Santosky v. Kramer,* —— U.S. at ——, 102 S.Ct. 1395.[16]

**16.** The court does recognize that under certain circumstances a restraining order may interfere with a defendant's right to select counsel of his choice. *Compare United States v. Bello,* 470 F.Supp. 723, with *Slappy v. Morris,* 649 F.2d 718 (9th Cir. 1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 2005, 72 L.Ed.2d 464. I also recognize that, as in this case, problems may arise as to state taxes due or necessary repairs on the property. While the first consideration is not without substance it does not appear of such overriding concern as to require a higher standard of proof. The latter consideration again appears to implicate property interests only. Moreover, both concerns may be adequately addressed by a properly framed order upon a motion made by a defendant for modification of the restraining order. Accordingly, neither consideration appears to warrant application of a higher standard of proof.

I conclude that insofar as the private interests element is concerned, they are more akin to disputes concerning property than any other interests. Accordingly, it would appear to me that the application of a preponderance of the evidence standard as to this element would suffice. *See Santosky v. Kramer*, —— U.S. ——, 102 S.Ct. at 1395.

The second consideration is "both the risk of erroneous deprivation of private interests resulting from the use of a 'fair preponderance' standard and the likelihood that a higher evidentiary standard would reduce that risk." *Santosky v. Kramer*, —— U.S. at ——, 102 S.Ct. 1398. As the court understands the method of applying this standard, one must examine the complexity of the case so as to consider what the risk of an erroneous determination would be and measure that against the ability of the defendant to respond effectively to the Government's case. *See Santosky, supra.* I begin by recognizing that CCE cases are viewed as among the most complex in federal criminal law. After an extensive review, including interviews with 42 prosecutors, the Comptroller General came to the conclusion that a forfeiture case is extremely "complicated," "more difficult to prosecute," (Comptroller General's Report, *supra* at p. 23) and requires that prosecutors have a degree of financial expertise which is in general not available. *See* Comptroller General's Report p. 25 et seq. and p. 34 et seq. The Department of Justice appears to concur in that judgment. *See* letter attached to the Comptroller General's Report at pp. 60 and 61 thereof.[17] Complexity alone suggests a high degree of risk of error. Moreover, it appears relatively clear that inasmuch as these forfeitures are in personam in character, the restricted rules of criminal discovery will apply. As anyone who has ever tried a criminal case in the federal court knows, these restrictive rules of discovery make defendants' ability to respond to the Government's case difficult at trial, much less at an early pretrial hearing. I thus conclude that both aspects of this element, *i.e.* the risk of erroneous decisions, and the ability of a defendant to respond suggest the application of a higher standard—perhaps the clear and convincing proof standard would be appropriate.

The third element is the weight of the governmental interest at issue. It is clear that "[b]y creating such a forfeiture procedure Congress intended to strip illicit drug rings of all profits and property, and thereby provide an additional deterrent to such activity. [citations omitted]" *United States v. Long*, 654 F.2d at p. 915. The purpose of the restraining order is equally clear. "These steps preserve the court's jurisdiction over the property and prevent the defendant from frustrating the effectiveness of the entire forfeiture procedure by disposing of the property before conviction." *Id.* Both of these interests are significant. The extent of drug traffic, its profit and its debilitating effect upon this country have been well documented and recognized. *See* Comptroller General Report, *supra* at pp. 1 et seq. This element, then, suggests application of the preponderance of evidence standard.

As with so many detailed examinations of the application of multifaceted standards to particular cases, certain of the elements point to resolution in one direction while other elements point to a different resolution. Overall it appears to this court that in balancing all three interests, a preponderance of evidence standard should satisfy constitutional minima for due process and, accordingly, I find such a standard is applicable.

### D. The Nature of Evidence Which May Be Admitted at the Hearing.

■ Central to this question is the availability of hearsay to the Government to meet its burden of proof. I begin, as I must, with the Federal Rules of Evidence. Those rules provide that they "apply generally to ... criminal cases and *proceedings* ..." Fed.R.Evid. 1101(b) (Emphasis added).

---

**17.** This court has already determined, with the concurrence of all counsel that this case is complex within the meaning of 18 U.S.C. § 3161(h)(8)(B)(ii) for Speedy Trial Act purposes.

Clearly then, unless an exception applies, this being a criminal proceeding, the Federal Rules of Evidence, including Fed.R.Evid. 802 (barring hearsay), applies to an adversary hearing for the purpose of continuing a restraining order under 21 U.S.C. § 848. As is well known, the federal rules then provide a series of exceptions in which they need not be applied. Fed.R.Evid. 1101(d) and (e). Inasmuch as the rules do not specify as an exception a hearing relating to the continuation of a restraining order, it would appear that by the very terms of the rules they apply to this proceeding.[18] Nonetheless, the Government argues that it may rely on hearsay. It argues that although *United States v. Long*, 654 F.2d 911, required a "full hearing" the district court in that case received hearsay and indeed decided the motion on the basis of that evidence.[19]

The defendant, on the other hand, argues that the term "full hearing" is a term of art which connotes both an opportunity to present evidence and an opportunity for cross-examination. *See United States v. Storer Broadcasting*, 351 U.S. 192, 202, 76

S.Ct. 763, 770, 100 L.Ed. 1081 (1956); *Akron, C, & Y Ry. Co. v. United States*, 261 U.S. 184, 200, 43 S.Ct. 270, 276, 67 L.Ed. 605 (1923). Accordingly, he argues hearsay should not be admissible. I agree with both parties that it is difficult to reconcile *Long's* holding relative to a "full hearing" with the fact that the district court apparently relied either entirely or almost exclusively on hearsay. The answer may simply be an instance of the well-known proposition that when hearsay is offered without objection, it may be received and will be sufficient to support a finding. *Calhoun v. Bailar*, 626 F.2d 145. In any event, whatever happened in the district court hearing in *Long*, the simple fact of the matter is that the admissibility of hearsay in a particular hearing is governed by the Federal Rules of Evidence. The federal rules make themselves applicable except as specifically exempted. No exemption is presented. Accordingly, I find that the Federal Rules of Evidence apply.[20]

CONCLUSION

The difficult questions tendered by the instant motion have engendered this long

18. The Government has made what I can only describe as a disingenuous argument that the exception for "preliminary examinations in criminal cases" found at Fed.R.Evid. 1101(d)(3) encompasses this kind of hearing. The argument appears plainly wrong. It seems clear that the preliminary examinations referred to in Fed.R.Evid. 1101(d)(3) are those provided for in Fed.R.Crim.P. 5(c). *See* Notes of Advisory Committee on Proposed Rules to 1101(d). That provision simply has no application to the instant matter.

19. In *Long* the circuit court describes the hearing held in the district court as one at which a federal agent testified relative to the purchase of the plane in issue with the profits of a drug ring. In addition the agent emphasized that the defendant had no legitimate income during the period of four years preceding the case. The court then held "In the instant proceeding, the agent's testimony is enough to sustain the restraining order and the performance bond." *United States v. Long*, 654 F.2d at 915.

20. I recognize that a reasonable policy argument can be made that there is no need to apply hearsay rules in this context. *See United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), a case prior to the adoption of the Federal Rules of Evidence, which permitted reliance on hearsay in a sup-

pression hearing. That holding was of course embodied as an exception to the application of the rules upon their adoption. Fed.R.Evid. 1101(d)(1). I personally do not subscribe to that view. Permitting reliance on hearsay, deprives the adverse party of meaningful cross-examination "the greatest legal engine ever invented for the discovery of truth." V Wigmore on Evidence § 1367, Chadbourn Revision (1974). As Wigmore has also said "The theory of the hearsay rule is that the many possible deficiencies, suppressions, sources of error and untrustworthiness, which lie underneath the bare untested assertion of a witness, may be best brought to light and exposed by the test of cross-examination . . . the hearsay rule . . . signifies a *rule rejecting assertions, . . . which have not been in some way subjected to the test of cross-examination.*" (Emphasis in original) Wigmore, *supra* § 1362 at p. 3. Whether my preference for Wigmore, or others' for Thayer's position, *see United States v. Matlock*, 416 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242, better serves the law is for purposes of this motion irrelevant. Such arguments must be addressed to the Committee on the Federal Rules of Evidence which has seen fit not to except these proceedings from the reach of the Federal Rules of Evidence.

and tedious examination of the discrete problems tendered by 21 U.S.C. § 848(d). Clearly, resolution of this issue would have been much easier had the Committee on Federal Rules of Criminal Procedure implemented the provisions of the statute with governing rules. Unfortunately they chose not to do so. Despite this opinion's length, the conclusions which I draw are indeed modest. A court having jurisdiction over a defendant charged with a violation of 21 U.S.C. § 848 may issue an ex parte temporary restraining order governing property alleged to be forfeitable in the indictment. Prior to the time that the Government may extend the ex parte order so that it will continue to trial, it must prove, at a timely hearing and by a preponderance of the evidence that it is likely to prove beyond a reasonable doubt at trial that the defendant is guilty of a violation of the CCE and the property that it seeks to restrain is forfeitable under this statute. Such proof must be had at a hearing governed by the Federal Rules of Evidence. Having established the ground rules, the court will set a hearing.

IT IS SO ORDERED.