UNITED STATES of America, Plaintiff,

v.

Daniel VEON, Defendant.

No. Crim. S–81–172A–LKK.

United States District Court,
E. D. California.

Oct. 12, 1982.

Kenneth G. Peterson, Asst. U.S. Atty., E.D. California, Chief, Crim. Div., Sacramento, Cal., for plaintiff.

Barry Tarlow, Los Angeles, Cal., for defendant.

## OPINION AND ORDER

KARLTON, District Judge.

For the second time, this court must address the Government's efforts effectively to restrain the transfer of several pieces of valuable real property which, it appears, are owned by defendant Daniel Veon. The indictment alleges that these properties represent profits derived from the defendant's criminal activities in connection with the importation and sale of cocaine. For reasons discussed below, the Government has recorded a notice of lis pendens as to the property and the defendant now seeks an order of expungement.

Insofar as I can determine, no court has ever published an opinion addressing the issue of whether a lis pendens may properly be filed concerning an action of this sort. Accordingly, I once again "set out on an uncharted course." *United States v. Veon,*

538 F.Supp. 237, 242 (E.D.Cal.1982).[1] The problem as posed is novel to say the least; however, another, more important issue is implicit in this initial esoteric inquiry. In order to decide the propriety of the lis pendens, the court must first determine the extent, if any, of the Government's cognizable interest in property that it claims will be subject to criminal forfeiture, pending adjudication of the defendant's criminal liability vel non. While this underlying question is certainly of broader interest in the emerging area of criminal forfeiture law, it also has received scant attention.

As I shall explain, unless and until the guilt of the accused is established, the Government has no legal or equitable interest in the subject property sufficient to affect the rights of heirs or assigns pendente lite. It follows, therefore, that although the forfeiture of certain real property may result, a criminal forfeiture action is nonetheless not within the category of proceedings which are proper subjects for the filing of a notice of lis pendens. Thus the lis pendens notice filed in the instant case must be expunged.

## I

### PROCEDURAL POSTURE

Most of the facts and procedural history pertinent to this motion are discussed at length in the court's earlier opinion and order. *United States v. Veon,* 538 F.Supp. 237 (E.D.Cal.1982). For present purposes the following summary will suffice: The Grand Jury in this district indicated defendant Veon, inter alios. The indictment in effect alleges that Veon was the "kingpin" of a "continuing criminal enterprise" in violation of 21 U.S.C. § 848. The indictment also charges that certain real and personal properties allegedly owned by Mr. Veon represent "profits obtained by him in such enterprise," and thus are subject to the criminal forfeiture provisions of the statute. 21 U.S.C. § 848(a)(2).

Soon after the original indictment was handed down, the Government sought ex parte and obtained an order from this court pursuant to § 848(d)[2] restraining Mr. Veon from transferring any interests in the subject real property. The court subsequently determined that although the original ex parte order had properly been issued, "such a restraining order must be of brief duration and must be followed by an adversary hearing concerning the propriety of continuing the restraining order until trial." *United States v. Veon,* 538 F.Supp. at 243.[3] Furthermore, the court held that the prescribed hearing must be conducted in accordance with the Federal Rules of Evidence; the hearsay evidence upon which the Government hoped to rely, therefore, would not be admissible at the hearing.[4] In accordance with that opinion, the matter was set for hearing. The Government declined to put on any admissible evidence that would support the continuing restraint of the property and the court dissolved the temporary restraining order.[5]

The Government thus found itself in a quandary. It was unwilling or unable to

---

1. In *United States v. Mandel,* 408 F.Supp. 679 (D.C.Md.1976) after denying the restraining order sought, the judge closed by stating that he "intimate[d] no opinion as to the possibility that the pendency of the petition may create a lis pendens." *Id.* at 684. I unfortunately have no such luxury.

2. 21 U.S.C. § 848(d) provides: "The district courts of the United States (including courts in the territories or possessions of the United States having jurisdiction under subsection (a) of this section) shall have jurisdiction to enter such restraining orders or prohibitions, or to take such other actions, including the acceptance of satisfactory performance bonds, in connection with any property or other interest subject to forfeiture under this section, as they shall deem proper."

3. The Ninth Circuit has now held that such a hearing is required. *United States v. Crozier,* 674 F.2d 1293, 1297–98 (9th Cir. 1982).

4. This ruling was specifically approved by the circuit court in *United States v. Spilotro,* 680 F.2d 612, 619 n. 4 (9th Cir. 1982).

5. The Government continues to maintain possession and custody of a large quantity of money, jewelry, and other valuable personalty that it alleges is the property of defendant Veon and is also subject to forfeiture under the provisions of § 848(a)(2). The court has previously denied the defendant's motion for return of the subject personal property. The court found that the Government has a valid purpose in retaining that property independent of an inten-

follow the appropriate procedure for restraining conveyance of the subject real property; nonetheless, it apparently feared that if the alleged "profits" were transmuted from real property to a more liquid form, they would be dissipated before it could win judgment against the defendant and thus assert its forfeiture rights under § 848(a)(2). The attorney for the Government resolved this dilemma with the simple but creative maneuver of filing a notice of lis pendens pursuant to the provisions of 28 U.S.C. § 1964 and California Code of Civil Procedure § 409 et seq.[6] In this manner the Government warned all the world—including prospective purchasers—that the real property in question was subject "to forfeiture to the United States." As the affidavits of the defendant filed in connection with this motion demonstrate, the Government indirectly restrained the sale of the property almost as effectively as it would by obtaining an order pursuant to § 848(d). Accordingly, the defendant has now moved to expunge the lis pendens.

## II

## STANDING

In its opposition brief the Government challenged Daniel Veon's standing to con-

tion to seek its criminal forfeiture, i.e., the property was seized pursuant to search warrants and potentially will be used as evidence at trial.

**6.** The federal lis pendens statute provides as follows: "Where the law of a State requires a notice of an action concerning real property pending in a court of the State to be registered, recorded, docketed, or indexed in a particular manner, or in a certain office or county or parish in order to give constructive notice of the action as it relates to the real property, and such law authorizes a notice of an action concerning real property pending in a United States district court to be registered, recorded, docketed, or indexed in the same manner, or in the same place, those requirements of the State law must be complied with in order to give constructive notice of such an action pending in a United States District Court as it relates to real property in such State." 28 U.S.C. § 1964. For purposes of proceedings before this court the federal law thus incorporates by reference the California procedures. Cal.Code Civ.Proc. § 409(a) in turn, specifically extends to actions pending in this court: "In an action concerning

test the filing of the lis pendens. In this regard, the Government pointed out that defendant Veon had never admitted to having any legal or equitable interest in the subject real property; in fact, the defendant's moving papers state that "[t]he record owner of these [disputed] parcels is *William Veon*." (Emphasis added).

■ At the time the argument was made, it raised a serious question as to whether the court even had jurisdiction to consider this motion. The Supreme Court has informed us that "at an irreducible minimum, Article III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the [opposing party].'" *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), *quoting Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979). At oral argument, however, counsel for the defendant resolved this threshold problem by making it quite clear that Daniel Veon asserts an ownership interest in the subject property sufficient to

real property or affecting the title or the right of possession of real property, the plaintiff, at the time of filing the complaint, and the defendant, at the time of filing his answer, when affirmative relief is claimed in such answer, or at any time afterwards, may record in the office of the recorder of the county in which the property is situated, a notice of the pendency of the action, containing the names of the parties, and the object of the action or defense, and a description of the property in that county affected thereby. *This section authorizes a notice of an action concerning real property pending in any United States district court to be recorded and indexed in the same manner and in the same place as herein provided with respect to notices of action pending in courts of this State.* From the time of filing such notice for record only, shall a purchaser or encumbrancer of the property affected thereby be deemed to have constructive notice of the pendency of the action as it relates to the real property and only of its pendency against parties designated by their real names." (Emphasis added).

provide him with standing to litigate this question.[7] For example, counsel argued that "... the existence of that *lis pendens* is dissuading potential buyers from purchasing the properties, and in effect taking away a property right from Mr. Veon: his right to either mortgage or sell that property." Any doubt as to whether counsel was referring to *Daniel* Veon was dispelled by the following remarks made towards the end of the hearing: "... I would like to sort of close with a comment made to me by one other legal scholar, my client, who has listened to all of this which has gone on, and his position seems to be: Well, the judge said at the time of the restraining order, I'm not going to let them freeze my assets [sic].... Now we are back here. I have the property, I've got to pay taxes, I've got to pay for that roof. I'm still going broke. And how can it be said that they're not preventing me from exercising rights that I have under this property? And like all of us he says: 'I don't understand this. It seems to me that they're taking something away from me.'" The court is satisfied that defendant Veon has standing for purposes of this motion.[8]

## III

## THE PROPRIETY OF THE LIS PENDENS

### A. *The Lis Pendens Statutes*

The gist of the defendant's argument is that the lis pendens procedure is itself unconstitutional, for it results in the depriva-

tion of a cognizable property interest without the protections mandated by the due process clause of the fifth amendment. It is a fundamental principle of federal jurisprudence, however, that "prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693 (1981), *citing Ashwander v. TVA,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *accord, Rosenberg v. Fleuti,* 374 U.S. 449, 451, 83 S.Ct. 1804, 1806, 10 L.Ed.2d 1000 (1963); *see also United States v. Veon,* 538 F.Supp. at 244–45. Because I conclude that the California statute requires the court to order the notice expunged, I need not—and indeed cannot—reach the constitutional issue tendered by the defendant.

The procedure for expunging a lis pendens is found in California Code of Civil Procedure section 409.1 which provides in pertinent part:

At any time after notice of pendency of an action has been recorded pursuant to Section 409 or other law, the court in which the action is pending s all, upon motion of a party to the action supported by affidavit, order that the notice be expunged, unless the party filing the notice shows to the satisfaction of the court, by a preponderance of the evidence, that:

(a) The action does affect title to or right of possession of the real property described in the notice; and

---

7. Of course, the Government has consistently asserted that Daniel Veon is in fact the owner of the property in question; thus both parties now assert that the defendant holds such an interest. William Veon (who is apparently the defendant's brother) has not appeared in this action. By virtue of the filing of the lis pendens notice, however, the court must assume that he has notice of the Government's assertion. William Veon's failure to appear gives rise to a reasonable inference that—at least for purposes of this motion—he does not choose to contest that assertion. Because the parties have not raised the question of whether William must in some fashion be joined as a party to this motion, and because the underlying case is a criminal action in which William is uninvolved, I will not pursue this problem at this

time. Nonetheless, the court notes with some discomfort that under the civil law William Veon may well be a party indispensable to a full adjudication of the issues presented in this lawsuit. *See* Fed.R.Civ.P. 19(a). This problem has obvious and serious implications for the trial of this action, and must be resolved before a judgment can be entered.

8. The defendant's reticence in this regard is wholly understandable. Nonetheless, it seems clear to the court that counsel's statements on behalf of Daniel Veon were made only for purposes of the motion now under consideration. *Cf. Simmons v. United States,* 390 U.S. 377, 391–94, 88 S.Ct. 967, 974–76, 19 L.Ed.2d 1247 (1968).

(b) Insofar as the action affects title to or right of possession of the real property described in the notice, the party recording the notice has commenced or prosecuted the action for a proper purpose and in good faith.

The first substantive question which must be addressed is whether the instant criminal prosecution, with its attendant criminal forfeiture sanction, is an action "concerning real property or affecting title to or right of possession of real property" within the meaning of the statute.[9]

At first glance, it would appear that the instant case is within the category of actions recognized by the statute. If the Government succeeds in proving that Daniel Veon took part in a "continuing criminal enterprise," and that the noticed property constitutes profits obtained in the course of that enterprise, the Government may be able to claim title and possession of the property. In the broadest sense, therefore, this action could be described as one "affecting the title to or the right of possession of real property."

Nonetheless, it is clear that under California law not all cases in which interests in real property are somehow implicated fall within the statutory definition. *Hardy v. San Fernando Valley Chamber of Commerce,* 99 Cal.App.2d 572, 222 P.2d 314 (1950); *Goheen Enterprises,* 265 Cal.App.2d 131, 71 Cal.Rptr. 126; *see, generally,* 51 Am.Jur.2d, *Lis Pendens,* § 21 (1970). For instance, an action for money damages is not an appropriate proceeding in which to file a lis pendens notice even though the plaintiff, if successful, will seek to satisfy his or her judgment by moving against specific real property owned by the defendant. *See, Brownlee v. Vang,* 206 Cal.App.2d 814, 817, 24 Cal.Rptr. 158 (1962).

For these analytical purposes, a proceeding under the "continuing criminal enterprise" statute bears an important similarity to an action for money damages: the essence of the dispute is the personal liability of the defendant rather than the possession, ownership, or use of a specific piece of real property. Put simply, both sorts of actions are in personam proceedings; in fact, the in personam nature of the criminal forfeiture proceeding has traditionally been cited as the chief characteristic distinguishing it from the various civil forfeiture procedures in rem. *The Palmyra,* 12 Wheat. 1, 14–15, 6 L.Ed. 531 (1827); *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 684, 94 S.Ct. 2080, 2092, 40 L.Ed.2d 452; *United States v. Veon,* 538 F.Supp. 237, 242 and cases cited therein.[10] In this sense, both the action seeking money damages and the criminal forfeiture procedure stand in marked contrast to the typical in rem action "affecting title to or right of possession of real property."

On the other hand, there is a significant distinction to be drawn between a judgment for money damages and the criminal forfeiture sought in this case: the former

---

**9.** A careful reader will note that the California statute permits the filing of a lis pendens "[i]n an action concerning real property or affecting the title or the right of possession of real property," Cal.Code.Civ.Proc. § 409, while the expungement provision provides that a lis pendens must be expunged if "[t]he action does not affect title to or right of possession of the real property." Cal.Code Civ.Proc. § 409.1. Both counsel and the court agree that the words "concerning real property" are not to be given a meaning independent of the phrase "affecting the title or the right to possession of real property. *See Kendall Brief Co. v. Superior Court,* 60 Cal.App.3d 462, 466–67, 131 Cal. Rptr. 515 (1976); *Allied Eastern Financial v. Goheen Enterprises,* 265 Cal.App.2d 131, 71 Cal.Rptr. 126 (1968). Ironically, it appears that the "concerning" language was adopted by the California Legislature solely in an attempt to conform to the language of the federal lis pendens statute. *Goheen Enterprises,* 265 Cal. App.2d at 133, 71 Cal.Rptr. at 126. Counsel and the court similarly are satisfied that the class of actions within the scope of the federal and state lis pendens statutes is defined by California law.

**10.** Indeed, the Department of Justice strongly emphasized this distinction when its representatives testified before Congress in support of the enactment of section 848(a) and the related "RICO" criminal forfeiture provision (18 U.S.C. § 1963(a)). *See* Maxeiner, *Bane of American Forfeiture Law—Banished at Last?,* 62 Cornell L.Rev. 768, 795–96 (1977) (hereinafter cited as Maxeiner).

generally may be satisfied against any of the defendant's property, while the instant proceeding may only be directed against the "profits" of the alleged criminal enterprise in whatever form those profits are manifest. *See United States v. Mannino,* 635 F.2d 110, 118 (2d Cir.1980).

Thus the case at bar neither falls neatly within nor without the category of actions described by the language of the California statute. In resolving this ambiguity I must look to the canons of statutory construction. Accordingly, I turn to an examination of the purpose that the statute was devised to serve. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979); *Judson Steel Corp. v. WCAB,* 22 Cal.3d 658, 669, 150 Cal.Rptr. 250, 586 P.2d 564 (1978). As I shall explain, the purpose underlying the lis pendens procedure is in no sense served by the filing of a notice in this case.

### B. *The Purpose of the Lis Pendens*

The lis pendens procedure was codified in order to create a fair system for resolving— or better, for obviating—disputes between persons who are in the process of litigating an asserted interest in a given piece of real property, and third persons who purchase (or lease, or encumber) the subject property during the course of the litigation.

Historically, the American statutes providing for recording of a notice of pendency of an action affecting title to or possession of real property were designed to limit, rather than to expand, the common law doctrine of constructive notice. In England, the common law developed the doctrine that transferees and encumbrancers took with constructive notice of title defects asserted in any pending action. The purpose was to prevent frustration of jurisdiction by transfers pendente lite. To eliminate the hardships which developed under this broad rule, such statutes as that of California limited

constructive notice to cases in which notice of pendency of the action was filed . . . .

*Goheen Enterprises,* 265 Cal.App.2d at 132, 71 Cal.Rptr. 126; see also 2 B. Witkin, *California Procedure: Actions,* § 206 (1970).[11]

■ It follows that under both federal and state law, "[t]he purpose of a *lis pendens* is to notify prospective purchasers and encumbrancers that any interest acquired by them in the property in litigation is subject to the decree of the court." *Beefy King International v. Veigle,* 464 F.2d 1102, 1104 (5th Cir.1972); *accord, Albertson v. Raboff,* 46 Cal.2d 375, 379, 295 P.2d 405 (1956). The Government apparently agrees with this formulation of the purpose of the lis pendens procedure; indeed, in its brief in opposition to the motion to expunge, it announces (at page 3) that "the Government, in filing the lis pendens merely gave notice to all third parties that any interest they acquire in said property would be subject to the outcome of a judicial proceeding."

While the Government has correctly stated the function of a lis pendens notice, its argument that the notice was appropriate in this case assumes the very issue which lies at the heart of this dispute: would the interest taken by a transferee pendente lite in fact "be subject to the outcome of [this] judicial proceeding?" Upon analysis, the answer appears to be no.

### C. *The Extent of the Government's Interest Vis-a-vis the Interest of a Nonfraudulent Transferee Pendente Lite.*

To determine whether the Government may properly file a lis pendens in this case, it becomes necessary to determine the nature and extent of the Government's interest in the property prior to judgment. Such interest, if any, must derive from the statute and thus analysis must begin with the text of the statute. *See Busic v. United*

11. The purpose of the federal lis pendens statute is thus to provide constructive notice "so that all who seek either to buy the property or to secure its possession, or even to place a lien upon it, do so with notice of and subject to whatever rights the prior institution of the federal action may have upon the property." U.S. Code Cong. & Admin.News 1958, pp. 3654, 3655.

*States,* 446 U.S. 398, 405–06, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980). The statute provides that "[a]ny person who is convicted ... of engaging in a continuing criminal enterprise shall forfeit to the United States —(A) the profits obtained by him in such enterprise...." 21 U.S.C. § 848(a)(2). Thus, by its terms the statute appears to speak to conviction as the date upon which a right to forfeiture exists. Nor is there anything in the statute which suggests that it provides for an earlier vesting of the title as is the case in civil forfeitures.

Nonetheless, implicit in the Government's position is the notion that the Government presently has some cognizable interest in the subject property that would take precedence over the interest asserted by a transferee pendente lite with actual or constructive notice of the criminal litigation. Otherwise, there would be no sense in which the transferee would take "subject to the outcome" of this lawsuit. Yet any such assertion of a present interest in the particular property is conceptually unsupportable, for it is at odds with the essential nature of the proposed criminal forfeiture.

As I have noted, the criminal forfeiture device has at least two distinctive features. First, 21 U.S.C. § 848(a)(2)(A) does not authorize the forfeiture of any specific piece of property (e.g., an instrumentality used in the commission of a crime). Rather, the statute calls for the forfeiture of "profits" obtained by the convicted felon in the course of the criminal enterprise. Thus the United States has the right and the correlative duty to trace those profits to the form in which they are embodied at the point

that they become forfeitable. *United States v. Mannino,* 635 F.2d 110; Report of the Comptroller General of the United States, "Asset Forfeiture—Seldom Used Tool in Combating Drug Trafficking" 34–35 (April 10, 1981) (hereinafter cited as Report of the Comptroller General).

■ The second point which must be reiterated is that the criminal forfeiture statute—unlike the more familiar civil forfeiture procedure—is not primarily a remedial law designed to determine if a given piece of property is "guilty" and therefore rightfully forfeited to the Government. On the contrary, it was enacted solely as an additional form of punishment; a sanction to be imposed after the personal guilt of the property's owner has been established. *United States v. Veon,* 538 F.Supp. at 242, and authorities cited therein.[12]

■ It follows from these basic principles that the Government possesses an interest in a given piece of property only to the extent to which that property is the embodiment of illicit "profits," and that the Government's interest does not arise until the personal guilt of the property's owner has been established. If the convicted defendant no longer has an interest in the subject property—i.e., if the property no longer constitutes the "profits" of the criminal enterprise—the Government can claim no right to its forfeiture. *See United States v. Meyers,* 432 F.Supp. 456, 461 (W.D.Penn.1977). By the same token, a third party who actually owns the property may not be divested of ownership barring proof of his or her *personal* guilt under the statute authorizing forfeiture.[13]  *United*

---

**12.** In particular, *see* Maxeiner, *supra* for an extensive discussion of the theoretical differences between the two forms of forfeiture. After quoting the Justice Department's characterization of civil forfeiture statutes as "wholly preventive and remedial" as opposed to the basically punitive criminal provisions, the author concludes: "Congress believed that criminal forfeiture was distinguishable from civil forfeiture because the former was directed primarily toward punishing the wrongdoer upon proof of his personal guilt, while the latter was primarily remedial." *Id.* at 795–96.

**13.** There is presently no allegation before this court that any sham or fraudulent conveyance has occurred in regard to the properties disputed here; thus I shall not indulge in a gratuitous discussion of the applicability of the doctrine of fraudulent conveyances to the case at bar. It is sufficient for present purposes to note that while a potential judgment creditor may have equitable remedies available to protect against such a transfer, the filing of a lis pendens notice is not among them. The fact remains that neither a party seeking money damages nor one seeking a criminal forfeiture has a cognizable interest in specific property prior to

*States v. Thevis,* 474 F.Supp. 134, 145 (N.D. Ga.1979). Indeed, an order decreeing the forfeiture of a piece of property not predicated upon proof of the "guilt" of either the property itself or its owner would appear to violate the owner's rights under the United States Constitution.[14]

As I observed in the opening paragraphs of this opinion, there is little guidance to be drawn from prior cases in this area. The most direct authority of which I am aware is Judge Murphy's opinion in *United States v. Thevis,* 474 F.Supp. 134, which concerns a criminal forfeiture under the parallel provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq. In that case, the defendant challenged, inter alia, portions of the indictment that sought "to cause the forfeiture of interests held by the defendant's heirs, successors and assigns." *Thevis,* 474 F.Supp. at 145. Judge Murphy's response to the defendant's argument was succinct: "This Court agrees. Mandatory forfeiture under 18 U.S.C. § 1963(a) follows conviction of the activities set forth in § 1962, *United States v. Meyers, supra* at 461. To the extent that those 'heirs, successors, and assigns' are not before the Court, there can be no forfeiture under 18 U.S.C. § 1963 since there can be no conviction under § 1962." *Id.* This holding is so plainly sound that I would unhesitatingly adopt it without further discussion.

Nevertheless, another case requires hesitation and consideration. One reading—though perhaps not the best reading—of *United States v. Long,* 654 F.2d 911 (3d Cir.1981), suggests a result contrary to that reached in *Thevis.* In *Long,* the Government sought forfeiture of an airplane that allegedly represented the profits of a "continuing criminal enterprise" within the meaning of 21 U.S.C. § 848(a). Before the Government could act to effect the forfeiture, however,

> ... Long became aware of [the] pending indictment against him [and] contacted his counsel ... about negotiating a surrender.... In these discussions, [the attorney] refused to represent Long unless he paid several debts for prior services. In addition, [the attorney] demanded a retainer for future expenses if he was to continue Long's representation. Long then offered to transfer title to his aircraft as consideration for past debts with the balance to serve as [the attorney's] retainer.

*Long,* 654 F.2d at 913. Title to the aircraft was subsequently transferred to the attorney and his partner per an oral contract. Under the terms of that agreement, the attorneys credited Long's past due account in the amount of $30,000.00, paid him $31,000.00 in cash, and kept the remaining $79,000.00 of the agreed-upon sale price "as a retainer for services in Long's upcoming criminal prosecution." *Id.*

After the indictment was returned, the district court issued an order restraining Long *and his attorneys* from assigning or transferring any right in the aircraft. On appeal the attorneys argued, inter alia, "that the criminal forfeiture of Section 848(a)(2) cannot operate against a third party who, although presently *holding* the aircraft, was neither indicted nor connected to

---

the entry of judgment. For a brief exposition of the rights of "subsequent creditors" in the fraudulent conveyance context, *see* 37 Am. Jur.2d *Fraudulent Conveyances* § 139 et seq. (1968).

**14.** The difficulty in squaring the civil forfeiture of property belonging to an innocent third party with the strictures of the fifth and fourteenth amendments is precisely what led the courts to draw the distinction between the in rem nature of civil forfeiture and the in personam character of the criminal variety. The history of this doctrine is traced from its root in the medieval practice of deodand to the modern era in *Cale-*

*ro-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. at 680–91, 94 S.Ct. at 2090–95; *see also* Maxeiner, *supra.* Certainly there is ample precedent for the strange but well established proposition that an object used in the commission of a crime may be personified and tried in a civil forfeiture proceeding. There is none, however, for the suggestion that property which at one point in time embodies illicit profits is itself "guilty" and thus forever after forfeitable regardless of the culpability vel non of subsequent owners. *See* Report of the Comptroller General, *supra* at 37.

the illicit enterprise in any way." *Long,* 654 F.2d at 916 (emphasis added).

The court of appeals began by noting the "paucity of law" in this area,[15] and then duly traced the doctrinal differences between in rem civil forfeitures and the in personam criminal forfeiture procedures.[16] Then, limiting its holding to "the circumstances of this case" (*Id.*), the Third Circuit affirmed the trial court, explaining that the "punitive purposes [of the statute] should not be frustrated by allowing a defendant to transfer the illegal proceeds to a knowing third party." *Id.*

Certainly, this portion of the *Long* opinion may be read as holding that property which formerly belonged to the defendant—but which is wholly owned by uncharged third parties at the time of conviction—may be subject to forfeiture under section 848(a)(2). I have already discussed why such a result would be doctrinally unsound and probably repugnant to the Constitution. Moreover, there is another, sounder reading that should be given the *Long* opinion. That reading will be discussed below. I first pause to note that *Long* itself demonstrates why it is simply not feasible to ascribe to the Government an interest in property that has been legitimately transferred before judgment.

A critical distinction must be made between the "profits" of the illicit enterprise and their product.[17]

The Government clearly is free to trace the profits obtained from a criminal enterprise into whatever form they have taken at the time that those profits become forfeitable. At the point, however, that the profits are no longer embodied in a given piece of property (by reason of sale, trade, or otherwise), the property is no longer potentially subject to forfeiture. The contrary view would lead to an absurd result: the Government could seek the forfeiture of every object and form through which the profits had passed. Suppose, for example, that Long had purchased the aircraft with funds he received from the illicit enterprise, and then had traded it for negotiable debentures, which he then used to purchase a laundromat. This contrary approach would permit the forfeiture of the original cash, *and* the aircraft, *and* the debentures, *and* the laundry establishment—despite the fact that the first three items presently belong to uncharged third parties. This is surely not the law.

*Long* need not and should not be read as endorsing such an absurd proposition. In reality, when the *Long* opinion is examined in light of the facts to which the court

**15.** Indeed, the *Long* court makes no reference whatsoever to *Thevis, Meyers,* or any other criminal forfeiture case in this portion of its opinion.

**16.** "In the traditional *in rem* proceeding, the government may garnish tainted property even though it is presently in the possession of innocent third parties who purchased it in good faith. [citations] Such forfeiture is permitted because it operates against the property itself *rather than against the owner.* [In footnote 9 at this point the court states: "Specifically, under the traditional *in rem* proceeding, the government's right to property vests at the moment the property is used illegally. When forfeiture is sought the government's right relates back to that time and avoids all intermediate sales. *See Simons v. United States,* 541 F.2d 1351, 1352 (8th Cir. 1976)."] [citations omitted] Conversely, *in personam* forfeiture does not technically operate against the property itself; rather it acts as an additional penalty against the defendant. Congress created the criminal forfeiture of section 848 to serve as an

additional deterrent to narcotics trafficking by seeking to deprive a defendant of any profits realized through his drug enterprise." *Long,* 654 F.2d at 916.

**17.** This distinction raises a problem of more than passing relevance to the case at bar, namely, the manner in which the profits must be described in the indictment if the Government hopes to effect their forfeiture post litem. Query as to whether a specific description of the property in which the alleged profits are manifest prior to or at the time of indictment can support the forfeiture of money or other property into which form the profits subsequently have been transmuted. In this regard, *see United States v. Grammatikos,* 633 F.2d 1013, 1024–25 (2d Cir. 1980). I recognize that the problem posed—to the extent that it is a problem at all—may well be obviated by a careful phrasing of the indictment. At any rate, this is yet another concern that evaporates upon the proper invocation of the temporary restraining order procedures of 21 U.S.C. § 848(d).

responded and the articulated concerns underlying the ruling, a far more sensible and consistent explanation emerges. At the least, it seems apparent that what the Third Circuit approved was the use of the temporary restraining order device set forth in section 848(d) to perform its intended function: to restrain the transfer of property that likely represented illicit profits, and in which the defendant continued to have a cognizable interest at the time that the order was entered. This is far different from saying that section 848 creates a prejudgment property interest in the Government superior to that of a legitimate third party transferee.

As the Third Circuit correctly states, "Congress created the criminal forfeiture of section 848 to serve as an additional deterrent to narcotics trafficking by seeking to deprive a defendant of any profits realized through his drug enterprise." *Long,* 654 F.2d at 916. Thus the primary concern voiced by the court, and the premise from which it proceeded, is that a defendant should not be permitted "to escape the penalty sought to be imposed by Congress simply by transferring his illgotten gains to a nonindicted third party." *Id.*

Of course, a defendant could not always escape the mandated penalty by transferring his property. To the extent he receives consideration for the transfer, that consideration in turn constitutes the illicit profits, and is subject to forfeiture. To the extent that the defendant receives less than full value for the property, and the "profits" are thus diminished, the defendant is in fact deprived of them just as if the Govern-

ment took possession. Once again, the prime statutory purpose is to punish the defendant, not to engross the public fisc. The danger inherent in a prejudgment transfer of property is not that the specific piece of property will be lost to the Government but, rather, that the profits will thus be transmuted into a form which cannot be reached by the court. It was doubtless this danger that prompted Congress to provide for temporary restraining orders in section 848(d), and it was in the face of this threat that the *Long* court approved the use of the statutory procedure.

As I noted above, $79,000 of the $140,000 "paid" to Long was in fact held by the attorneys as a "retainer:" $50,000 as a fee for services to be rendered, and $29,000 to "cover [the attorney's] future personal expenses." 654 F.2d at 913. Thus at least a substantial portion of the value of the craft —and, depending on the nature of the retainer agreement, perhaps the bulk of it— was essentially being held in trust by Long's attorneys.[18] In effect, Long continued to maintain an equitable interest, correspondent to that portion of the craft's value which served as a sort of deposit, until such time as the attorneys incurred the personal expenses and performed those services for which the deposit had been provided. At the least, the *Long* court reasonably could have concluded as much.

It was in this peculiar factual setting that the trial court issued an order restraining Long and the lawyers from assigning or transferring rights to the aircraft. As the court of appeals quite properly noted, that "restraining order simply preserve[d] the

---

**18.** It is not clear whether the $50,000 fee constituted a "true retainer fee" or merely an advance payment for legal services to be performed against the account, as it were. The distinction between the two sorts of retainer fees is illustrated nicely by California's Rule of Professional Conduct 2–111(a)(3), which provides: "A member of the State Bar who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned. However, this rule shall not be applicable to a true retainer fee which is paid solely for the purpose of insuring the availability of the attorney for the matter." As counsel for defendant Veon correctly points out, an

absolute assignment of property to serve as a "true," non-refundable retainer extinguishes the client's interest in that property. It follows, a fortiori, that to the extent that such a transaction has occurred, the Government cannot obtain forfeiture of the assigned property under section 848. As discussed in the text, it appears that *Long* involved a sort of hybrid situation, where the defendant apparently retained an interest in a portion of the property transferred, but not all of it. It can not be ascertained from the opinion in that case whether the interest retained by Long extended to the $50,000 fee, or was limited to the $29,000 advance against expenses.

status quo pending Long's eventual trial and a final determination, pursuant to Fed. R.Crim.P. 31(e), of whether the plane [would] be forfeited." *Long,* 654 F.2d at 915 (note omitted). At the time the order was issued there remained a serious issue for litigation as to whether the aircraft was still in substantial part an embodiment of profits obtained by Long in a continuing criminal enterprise. Presumably the Government had established by a preponderance of the evidence that it could prove those facts beyond a reasonable doubt. *Long,* 654 F.2d at 915; *see also Veon,* 538 F.Supp. 237. If the order had not issued, and the plane had been sold prior to judgment, there was obviously a substantial risk that Long's "profits" would be wholly transmuted into a form that could not be reached by the court, namely, the right to or the benefit of the attorneys' services.[19] Viewed in this light, the trial court's order and the Third Circuit's approval of that order were in no way inconsistent with this court's interpretation of the section 848 forfeiture procedures.

For purposes of this analysis, the fact that legal title to the aircraft as a whole was held by an unindicted party is of no moment.[20] The duty of the Government to trace the profits creates the correlative right in the Government to trace the profits into whatever property they are embodied, regardless of the state of the property's title. What need be shown is that the defendant continues to possess an interest in the property, whether legal or equitable, and that the defendant's interest derives from the illicit profits described in the statute. What is significant in *Long,* therefore, was not that the Government had some sort of prejudgment interest superior to that held by the attorneys—for it had none—but that the defendant apparently still had an interest in the disputed property, and there was a real danger that the profits represented by that interest would be changed into an unreachable form.

Read in this manner, *Long* does not tender the practical, theoretical and constitutional difficulties discussed above. Cases, like statutes, should be read as reaching rational results and not in a manner that poses unnecessary and perhaps insurmountable problems of constitutional doctrine and practical effect. I conclude that the *Long* court did not recognize a property interest in the Government prior to judgment sufficient to divest a third party transferee. Having so concluded, I note that whatever the relative merits of the *Long* opinion, it does not bear directly on the problem now before the court and it surely presents no impediment to the analysis endorsed in *Thevis* as discussed at some length in this opinion.

## IV

## SUMMARY

The significance of the foregoing discussion to the motion at bar is that unless and

---

**19.** I note in passing that the carefully constructed arrangement between Long and his attorneys presented that court with a situation that could almost be described as sui generis. Although the alleged profits still apparently existed in a form which could be seized, there was a substantial threat that they could be transformed into something unseizable. Thus the central problem encountered by the *Long* court was one which may be unique to personal service contracts; although the profits would continue to exist, they would exist in a form which could not be grasped by the firm hand of the law.

**20.** I do not mean to suggest that a court may disregard or prejudice the legitimate interests of third parties merely because a section 848 defendant has rights in property that is also theirs. *See* n. 7, *supra.* Thus in the factual setting presented by the *Long* case, for example, nothing would preclude the attorneys from seeking modification of the restraining order so that they could sell the airplane and divide the proceeds between the portion of the plane's value that was undisputedly theirs, if any, and the portion that arguably represented Long's "profits." Of course, the circumstances of the transfer from Long to his attorneys suggests that the entire transaction may have been disputed. The fact that the court ordered a performance bond of $400,000.00 suggests that the value of the plane greatly exceeded the $140,-000.00 price purportedly paid by the lawyers. That fact, combined with other circumstances surrounding the transfer to the attorneys (*e.g.,* a mysterious meeting in the Bahamas in which the transfer was consummated) may be viewed as suggestive of a sham or fraudulent transfer. *See Long,* 654 F.2d at 913.

until the defendant is convicted, the Government cannot assert any claim to possession or ownership of the disputed property. A purchaser pendente lite would therefore take the property free and clear of the Government's claim, regardless of whether the purchaser had constructive or even actual notice of the action at bar. "Thus the notice, even if permitted to remain of record, would have no legal effect but would serve only as a practical blackjack." *Goheen Enterprises,* 265 Cal.App.2d at 134, 71 Cal.Rptr. 126.

In sum, the purpose of the lis pendens— to notify potential purchasers pendente lite of a possible defect in the title or possessory right that they seek to acquire—cannot be effectuated by the filing of a notice regarding this action, for no such defect presently exists. I thus conclude that by its very nature, a criminal forfeiture proceeding is inappropriate for the filing of a lis pendens.[21]

It cannot be denied that the Government is "interested"—in the ordinary, artless sense of that word—in ensuring that the real property discussed here is not transferred to a third party pending the outcome of this case. If the Government is correct, and the property is an embodiment of "profits" obtained by Daniel Veon in a continuing criminal enterprise, it would certainly prefer to have those "profits" maintained in such an easily apprehensible form.[22] In that respect, however, the Government is simply in a position analogous to that occupied by the litigant "in an ordinary action for money" who seeks to "effectively tie up the title of another litigant ... with complete immunity to the requirement for posting attachment bonds." *Brownlee v. Vang,* 206 Cal.App.2d at 817, 24 Cal.Rptr. 158.

For the reasons stated in this opinion, I conclude that the present litigation is not an appropriate subject for the filing of a lis pendens notice pursuant to 28 U.S.C. § 1964 and Cal.Code Civ.Proc. § 409 et seq. The lis pendens notice filed by the Government must therefore be expunged.

IT IS SO ORDERED.

---

**21.** In its supplemental brief, filed at the court's request, the Government relies chiefly on the case of *Finley v. Hughes,* 106 F.Supp. 355 (E.D. S.C.1952). In *Finley,* the court held that an in personam action for fraud in which the plaintiff seeks to impress a constructive trust on certain property allegedly purchased with the converted funds is an appropriate subject for the filing of a lis pendens. The Government candidly admits that the *Finley* court was applying South Carolina law and that the case was decided several years before the federal lis pendens statute was enacted. The Government argues, however, that those distinctions should not in themselves deter the court from following the reasoning of *Finley.* I agree, and add that the fact that *Finley* has not been cited in a single published opinion in the thirty years since it was issued would not necessarily prevent me from following its reasoning. With all due respect, however, the *Finley* court made absolutely no attempt to come to grips with the doctrinal problem tendered by this motion. In short, there is no reasoning in the *Finley* opinion for me to follow; there is only the statement of the issue and the bland conclusion that "In my opinion the last claim of the plaintiff is a claim which affects the title to the real property described in the complaint, and for this reason the motion for the cancellation of the lis pendens should be denied, and it is so ordered." *Id.* at 356. While there may be no case better on point than *Finley v. Hughes,* I do not feel compelled to follow that precedent.

**22.** It bears repeating that Congress foresaw this problem and provided a direct means for solving it, namely, the restraining order procedure set forth in 21 U.S.C. § 848(d).