UNITED STATES of America

v.

Christopher F. RECKMEYER II, et al.

Crim. No. 85–00010–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 6, 1986.

See also 627 F.Supp. 412.

Karen P. Tandy, Kent Robinson, Asst. U.S. Attys., Alexandria, Va., for plaintiff.

Thomas V. Monahan, John R. Prosser, Hall, Monahan, Engle, Mahan & Mitchell, Winchester, Va., for petitioners.

## MEMORANDUM OPINION

CACHERIS, District Judge.

This matter is before the court on the Petition of William J. Reckmeyer, Sr. to recover certain property forfeited to the United States as a result of the convictions of Christopher ("Chris") and Robert ("Rob-

ert") Reckmeyer.[1] Specifically, William Reckmeyer seeks to recover the following property:

1. $25,000 principal due on an original unsecured promissory note of $40,000 given by Christopher Reckmeyer on September 20, 1980.

2. $3,490.11 interest due on $25,000 note given by Robert Reckmeyer. The principal was paid upon the sale of certain real property but to date the interest remains unpaid.

3. $8,230 consisting of $7,000 principal and $1,230 interest at 12% on a note given by Robert Reckmeyer which is secured by two Ford trucks. (Numbers 12 and 19 of the Forfeiture Order).

4. An interest in 146.2785 acres of real property known as "The Orme Property" for which William Reckmeyer, Sr. purchased for $157,000 cash and a $112,000 note payable to Chris Reckmeyer. William Reckmeyer claims that he holds a nonforfeitable interest in the property to the extent of the amount he paid for in cash.

For the reasons set forth below, the Petition of William J. Reckmeyer is granted as to all items except the $3,490.11 in interest due on the $25,000 note from Robert Reckmeyer.

## I

The court makes the following findings of fact:

The court adopts the Stipulation of Facts filed by the parties on the afternoon of trial. Petitioner William J. Reckmeyer, Sr., is the owner and manager of a consulting firm known as Inter-National Research, Inc. ("Inter-National"). Inter-National povides consulting services for the United States dealing in matters concerning the Soviet military threat to the United States. It enters into contracts with both the United States Government and with sub-contractors.

Prior to 1977, both Robert and Chris Reckmeyer had left the family home. Robert left at the age of seventeen. Chris left at the age of twenty. Up to 1977, William Reckmeyer was unaware of any drug-related activities concerning his sons with the exception of one incident involving Robert, who was convicted, as a juvenile, of a marijuana offense. This conviction occurred when Robert was in high school.

From 1977 to 1985, William Reckmeyer believed that his sons were legitimate business brokers in commodities and that they traded in furniture, brass, jewelry, rugs, and other expensive artifacts. William Reckmeyer was unaware of his sons' illegal activities in drug trafficking.

Sometime in late March or early April, 1983, Robert Reckmeyer returned home and told his father he was under investigation, but that he was "clean." Robert refused to supply any further details as to the nature of the investigation.[2] Shortly thereafter in 1983, William Reckmeyer be-

---

1. William Reckmeyer's two sons, Robert and Chris, were convicted of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848. These charges stemmed from their involvement in the trafficking of illegal drugs. Robert and Chris plead guilty and were sentenced on May 17, and May 26, 1985. Robert was also convicted of possession of a machine gun, in violation of 26 U.S.C. §§ 5861(d), and 5871, and failure to report foreign currency, in violation of 31 U.S.C. § 5316, 31 C.F.R. 103. Chris was also convicted of aiding in the filing of false corporate income tax returns in violation of 26 U.S.C. § 7206(2) and 18 U.S.C. § 2, and filing a false income tax return in violation of 26 U.S.C. § 7206(1). On May 17, and June 25, 1985, this court entered Orders of Forfeiture of drug related assets pursuant to 21 U.S.C. § 853.

2. William Reckmeyer's testimony on this point was corroborated by Robert when he testified that in April, 1983, he told his parents that there was a grand jury investigating his past business transactions with two gentlemen. At that time, he never made any mention of the nature of the investigation. Nor did he mention Chris. Robert, a government witness, was impeached by another government witness, George Preston, a DEA Special Agent. Preston indicated that sometime in March, 1985, Robert indicated that he had told his parents about his drug involvement in 1983. Mr. Preston's testimony, however, is not affirmative evidence. *McCracken v. Richmond F & PR Co.*, 240 F.2d 484, 487 (4th Cir.1957).

came aware that Chris was also under investigation, however Chris indicated that the investigation was focused on tax matters because he mainly dealt in cash. William Reckmeyer was subpoened in September, 1983, to appear before a Grand Jury although this appearance was continued to March, 1984. When William Reckmeyer first met with agents, he was first told that the agents were looking at financial transactions between him and his two sons. He was also told that he was not the target of the Grand Jury investigation. It was not until the Spring of 1984 that William Reckmeyer became aware that the Grand Jury investigation involved illegal drug activity and at that time Chris continued to insist that there was only a tax problem.

On September 20, 1980, William Reckmeyer loaned Chris Reckmeyer the sum of $40,000.00 as evidenced by a written promissory note. The loan was made to enable Chris to purchase the Shelburne Glebe farm. On May 8, 1981, Chris repaid $15,-000.00 of that loan leaving a balance due and owing of $25,000.00, which remains unpaid. There was no deed of trust securing payment of this note.

On October 10, 1980, Robert borrowed $25,000.00 from Inter-National Research Institute Defined Benefit Plan, the pension plan of that corporation, which is wholly owned by William Reckmeyer. In return, Robert gave a written promissory note secured by a Deed of Trust in certain real estate known as the Gibralter Farm. Gibralter Farm was sold on December 2, 1983, and the principal balance of $25,-000.00 was repaid to Inter-National Research Institute Defined Benefit Plan out of the proceeds of the sale. The interest due of $3,490.11 was never paid and is still due and owing, despite written formal requests for payment made as early as December 9, 1983.

On November 29, 1983, Robert borrowed an additional $7,000.00 from Inter-National Research Institute at the rate of 12% per annum. He never repaid this sum, which is now due and owing in the total amount of $8,240.00. As security for this loan, William Reckmeyer holds titles to two Ford trucks, which have subsequently been ordered forfeited by the court. (Numbers 12 and 19 of the Forfeiture Order).

On January 6, 1984, William Reckmeyer purchased the "Orme Property" consisting of 146.2785 acres from Chris. As consideration, William Reckmeyer executed a promissory note payable to Chris and Nancy Reckmeyer in the amount of $112,500.00, due on January 6, 1985. He also paid directly to one Nancy Orme, the owner previous to Chris, $157,000.00 in cash, which satisfied a Deed of Trust note given by Chris to Nancy Orme as part of the original purchase price paid by Chris on the property. The government stipulates that the $157,000.00, used by William J. Reckmeyer to pay off and satisfy the Deed of Trust note held by Nancy Orme, was distributed from the accounts of William J. Reckmeyer's business, Inter-National Research, Inc. On May 17, 1985, a Consent Decree for Forfeiture was filed. Under this decree Chris Reckmeyer agreed to forfeit, *inter alia*, the Orme Property and the January 6, 1984 promissory note. Based upon the agreement evidenced by the Consent Decree for Forfeiture, this court ordered that both the Orme Property and the $112,500.00 promissory note be forfeited.

William Reckmeyer testified that none of the monies utilized by him in the transactions at issue were generated by any of Chris or Roberts' activities. At trial the government stipulated that William Reckmeyer's personal income was bona fide. (Transcript of October 24, 1985, at 61). The court finds for the record that the funds utilized by William Reckmeyer to enter into all the transactions at issue derived from the profits of William Reckmeyer's legitimate business interests.

Before proceeding to the legal issues involved, the court notes that it believes William Reckmeyer to be a very credible witness. The court credits his testimony concerning the bona fide nature of the transactions discussed above as well as the fact of his personal ignorance of his sons' activities.

## II

Although arguably effective in achieving specific deterrence or incapacitation goals, forfeiture sanctions also raise constitutional and historical problems. As Judge Politz observed in a recent dissenting opinion:

Just as nature abhors a vacuum, historically our society has abhored forfeitures ... [T]he framers of the Constitution demonstrated their repudiance of the harsh English tradition of criminal forfeiture, and our very first Congress forbade the forfeiture of an estate because of a criminal conviction. Further, a forfeiture with an *in personam* application, as we have before us, is to be most charily assessed.

*United States v. Martino,* 681 F.2d 952, 962 (5th Cir.1982) (Politz, J., dissenting). In *United States v. One Ford Coach,* 307 U.S. 219, 59 S.Ct. 861, 83 L.Ed. 1240 (1939), the Supreme Court noted, "Forfeitures are not favored; they should be enforced only when within both letter and spirit of the law". *Id.* at 226, 59 S.Ct. at 865. In *Howard v. Federal Crop Ins. Corp.,* 540 F.2d 695 (4th Cir.1976), the Fourth Circuit stated: "[T]here is a general legal policy opposed to forfeitures." *Id.* The general policy opposed to forfeitures is based on their tendency to inordinantly punish both the guilty and the innocent. In light of this danger, the court will follow Judge Politz's advice and will "charily" proceed to dispose of the issues raised by the Petitions of William Reckmeyer.

The dispositions of these claims are governed by 21 U.S.C. § 853(n)(6).[3] This Section provides the only mechanism for third parties to contest any order of forfeiture under Section 853. Section 853(n)(6) specifically provides:

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

(A) the petitioner has a legal right, title, or interest in the property, and

such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section; the court shall amend the order of forfeiture in accordance with its determination.

21 U.S.C. § 853(n)(6). At issue before the court is the scope of third-party interests which should be recognized under Section 853(n)(6)(A). The government argues that only persons having security interests in specific forfeited assets have standing to contest a forfeiture under this section. The government argues that this proposition is clearly established by the multitude of case law surrounding *in rem* forfeitures. *See e.g. United States v. $47,875.00 in U.S. Currency,* 746 F.2d 291 (5th Cir. 1984); *United States v. $4,255,000.00, etc.,* 762 F.2d 895 (11th Cir.1985).

The court disagrees with the government's position. Criminal forfeiture under 21 U.S.C. § 853 is *in personam* in nature. The legal fiction of "guilty chattel" in *in rem* forfeitures with all its attendant consequences for civil liberties is constitutionally infirm in the punitive context of an *in personam* forfeiture. *See United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984); *See also United States v. Veon,* 538 F.Supp. 237, 242 (E.D.Cal.1982) (*In rem* forfeiture doctrines found totally inapposite in criminal forfeiture context); *United States v. Rogers,* 602 F.Supp. 1332

**3.** Section 853(n)(6) is part of 21 U.S.C. § 853, the Criminal Forfeiture Statute. This statute is a subpart of Pub.L. 98–473, the Comprehensive

Crime Control Act of 1984 which became law on October 12, 1984.

(D.Colo.1985) (*in rem* forfeiture cases "not particularly enlightening" in dealing with Section 853). The *in rem* forfeiture cases thus provide little guidance on the issue now before the court.

The justification for the revival of *in personam* forfeitures under RICO, CCE and the newer 1984 Criminal Forfeiture Act was to provide both a severe penalty and a strong deterrent to those involved in the trafficking of illicit drugs and other illegal activities. *See United States v. Martino*, 681 F.2d 952, 957 (5th Cir.1982). Recognizing the harsh consequences *in personam* forfeiture can work on innocent persons, Congress, in passing the 1984 Criminal Forfeiture Act, also expressed its intent that these heavy economic sanctions not be imposed on innocent third parties. The Report of the Senate Judiciary Committee on S. 1762, the bill which was finally enacted as Section 853, states: "Third parties who assert claims to criminally forfeited property, which in essence, are challenges to the validity of the order of forfeiture are entitled to a judicial determination of their claim." S.Rep. No. 225, 98th Cong., 1st Sess. 208 (1983) U.S.Code Cong. & Admin.News 1984, 3182, 3391. Congress, accordingly provided Section 853(n) which sets up the mechanism for hearing third-party claims. Congress also provided Section 853(o ) which states: "The provisions of this Section shall be liberally construed to effectuate its remedial purposes," to enhance the ability of the courts to protect the rights of third parties in forfeited property.

In determining the scope of property interest of third parties to be recognized under Section 853(n)(6), the words of Section (n)(6) must not be read in a vacuum, but must be interpreted to effectuate the overall intent of the statute. As will be shown, a liberal, or broad recognition of these third parties' interest constitutionally enhances the ability of the Criminal Forfeiture Statute as a strong deterrent to crime. Conversely, a strict interpretation of Section 853(n)(6)(A) which only provides standing to persons with secured interests in property seized would likely render the statute unconstitutional.

Section 853(d) underscores the Congressional wisdom in providing for the liberal construction of the statute "to effectuate its remedial purposes." *In personam* forfeiture requires that there be a nexus between an illegal act and the property forfeited. Prior to 1984, and the passing of Section 853(d), some commentators and courts had concluded that it was necessary to trace the specific property forfeitable under RICO and CCE to the form in which it was currently held by the offender. *See e.g. United States v. Veon*, 549 F.Supp. 274, 280 (E.D.Cal.1982), rev'd mem. 720 F.2d 685 (9th Cir.1983); Report of Comptroller Gen. of the United States, *Asset Forfeiture—A Seldom Used Tool In Combating Drug Trafficking*, 34 (1981).[4] Under the 1984 Act, the government's burden in establishing a nexus between the illegal activity and the assets to be forfeited has been considerably relaxed. Section 853(d) sets forth procedures for a "permissive presumption that property obtained by drug traffickers during the time period of their illegal acts is subject to forfeiture."[5] The Senate Report at 212, U.S.Code Cong. & Admin.News 1984, at 3395 explains that

---

**4.** "RICO and CCE require a relationship between the property to be forfeited and the offense of conviction. As both a legal and practical matter, this imposes an obligation on the prosecution to show, through asset identification and tracing, that the property to be forfeited was itself purchased, acquired, or maintained with illicitly derived funds." *Id.*

**5.** This section draws upon the practice in criminal tax evasion cases of using the defendant's net worth to establish the government's case and creates a presumption of forfeitability once

the government has established, by a preponderance of the evidence, that two circumstances exist:

(1) [that] such property was acquired by such person during the period of the violation of this subchapter or subchapter II of this chapter or within a reasonable time after such period; and
(2) there was no likely source for such property other than the violation of this subchapter or subchapter II of this chapter.

21 U.S.C. § 853(d).

the presumption was aimed at alleviating the government's difficulties in "produc[ing] direct evidence that particular property of the defendant constitutes, or was purchased with such proceeds". S.Rep. No. 225 at 212 (1983), U.S.Code Cong. & Admin.News 1984 at 3395.

Under Section 853(d), the defendant may present evidence of legitimate sources of his/her assets to rebut the presumption of forfeitability. However, a general creditor who lends money or provides other assets to the defendant may not present any evidence under this section. The effect of not providing a mechanism for these third parties would be to allow the findings against the defendant under Section 853(d) to conclusively abrogate their property rights. This would be a violation of the Fifth Amendment's proscription that "No person shall be ... deprived of ... property, without due process of law." U.S. Const. Amend V.[6] Stated another way, such a result violates the basic constitutional principal that one cannot be bound by an *in personam* judgment resulting from litigation to which one is not a party. *See Zenith Radio Corp. v. Hazeltime Research, Inc*, 395 U.S. 100, 110, 89 S.Ct. 1562, 1569, 23 L.Ed.2d 129 (1969); *See also United States v. Thevis*, 474 F.Supp. 134, 145 (N.D.Ga.1979), *aff'd on other grounds*, 665 F.2d 616 (5th Cir.), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982) (Court holds nondefendant may not be subject to result of criminal forfeiture proceeding); *United States v. Veon*, 549 F.Supp. 274, 280 & n. 13 (E.D.Cal.1982) (concluding in dictum that "a third party who actually owns the property may not be divested of ownership barring proof of his or her personal guilt under the statute authorizing [criminal] forfeiture"). It also follows that without providing safeguards to these general creditors under Section 853(n)(6)(A), the presumption in Section 853(d) is likely to lead to erroneous results. At trial, or in plea negotiations as we have in this case, a defendant is likely to have little or no interest in litigating the issue of ownership of property belonging to other persons. To the contrary, a RICO or CCE defendant may have an incentive to encourage government suspicions that third parties hold the tainted interest, in order to protect his own assets from forfeiture. *Cf.* D. Smith & E. Weiner, Criminal Division, Criminal Forfeitures Under The RICO And Continuing Criminal Enterprise Statutes, 34 n. 36 (United States Department of Justice Memorandum 1980).

■ The court does not believe that Congress intended that the criminal forfeiture statute would be applied in such a manner as would cause such great hardship to innocent persons in violation of their constitutional rights, while also leading to erroneous results in a large number of circumstances. The court does believe Congressional intent that "Third parties who assert claims to criminally forfeited property, which in essence are challenges to the validity of the order of forfeiture, are entitled to a judicial determination of their claim," Sen.Rep: No. 225 at 208, U.S.Code Cong. & Admin.News 1984 at 3391, mandates that it construe Section 853(n)(6)(A) to provide standing for all general creditors to make claims which may rebut the government's presumption of forfeitability under Section 853(d). Therefore, to prevail on his/her claim, a general creditor must establish, by

---

**6.** Recently, the Ninth Circuit in *United States v. Crozier*, 777 F.2d 1376 (1985), held that Section 853(e)'s provisions for restraining orders or injunctions on the filing of an indictment and the hearing provisions of Section 853(n) did not comply with the Fifth Amendment's due process guarantees of either defendants or third parties. The court stated that where there is an absence of any hearing on the imposition of a restraining order on a defendant's property, and a hearing for third party interests does not take place for months or years after a restraining order is issued, the Criminal Forfeiture Act cannot be construed as proving a hearing "at a meaningful time" as required by the due process clause. If applied to this case, the Ninth Circuit's reasoning in *Crozier* would reveal an even greater due process violation if the court were to follow the government's arguments and only provide standing to secured creditors under Section 853(n)(6). This is because these third parties would have less than a hearing at an unmeaningful time; they would have no hearing at all.

the preponderance of the evidence, that, in fact a bona fide obligation does exist between the creditor and the defendant which would overcome the governments' presumption of forfeitability pertaining to either specific assets or a specified amount of money seized. Any narrower interpretation of "legal right[s], title, or interests" in Section 853(n)(6)(A) would likely render the statute unconstitutional. This procedure will help insure that the prime statutory purpose to punish the defendant will be effectuated without unfairly punishing innocent third persons.

## III

■ The court will now proceed to dispose of William Reckmeyer's claims.

(1) $25,000 principal due on original unsecured promissory note of $40,000 given by Christopher Reckmeyer on September 20, 1980.

From the evidence produced at trial in this matter, the court finds that William Reckmeyer did make a loan of $40,000 to Chris Reckmeyer on September 20, 1980. These funds were not derived from illegitimate sources, but rather from William Reckmeyer's lawful earnings. The court further finds that $25,000 of the original loan of $40,000 remains due and owing to William Reckmeyer. This amount was not a proceed of any illegal activities of Chris or Robert Reckmeyer and thus was not properly forfeitable to the United States under Section 853(d). Under Section 853(n)(6)(A), William Reckmeyer has established, by a preponderance of the evidence, that he has a legal right, title, or interest in an amount of $25,000 seized from the monies confiscated from Chris Reckmeyer, and such right, title, or interest renders the court's previous Order of Forfeiture invalid as to this amount. The court will thus amend the Order of Forfeiture in accordance with this determination.

(2) $3,490.11 interest due on $25,000 note given by Robert Reckmeyer.

■ The court finds that a bona fide obligation exists between William and Robert Reckmeyer for $3,490.11 in interest due

on a $25,000 note. However, as to this interest, the court finds that William Reckmeyer has not overcome the presumption of forfeitability as established by the government pursuant to Section 853(d). More specifically, William Reckmeyer has not shown that this amount of interest due was a more likely source of the monies seized than any illegal activity of Defendants. William Reckmeyer thus has not established by a preponderance of the evidence that he has a legal right, title, or interest in $3,490.11 for interest due him, from monies seized from Robert Reckmeyer which would render the court's previous Order of Forfeiture invalid as to this amount. William Reckmeyer's Petition for this amount must therefore be denied.

(3) $8,230 consisting of $7,000 principal and $1,230 interest at 12% on a note given by Robert Reckmeyer which is secured by two Ford trucks (Numbers 12 and 19 of the Forfeiture Order).

■ The court finds that William Reckmeyer did make the above referenced loan of $7,000, that interest of $1,230 is due and owing and that this obligation is secured by two Ford trucks which have been ordered forfeited. The court further finds under Section 853(n)(6)(B) that William Reckmeyer is a bona fide purchaser for value of the right, title, or interest in the two Ford trucks. The court will therefore amend the Order of Forfeiture and order that the trucks are to be sold and the government is to pay William Reckmeyer his equitable interest of $8,230 in the trucks.

(4) The Orme Property

■ The court finds that William Reckmeyer has an equitable interest of $157,000 in the Orme Property and that such interest was paid out of funds legitimately derived from his business. The court further finds that William Reckmeyer was a bona fide purchaser for value of the entire property and was reasonably without cause to believe that the property was subject to forfeiture. William Reckmeyer has thus established, by a preponderance of the evidence, that he is entitled to this property

under either Sections 853(n)(6)(A) or (B). The court will therefore grant William Reckmeyer's Petition and amend the Order of Forfeiture in accordance with this finding. William Reckmeyer remains liable on the $112,500 note payable to Chris Reckmeyer which has been seized and forfeited to the government. The court will apply the $25,000 due on the original note for $40,000 given by Chris Reckmeyer and order William Reckmeyer to pay the remaining $87,500 to the government.

An appropriate Order shall issue in accordance with this Memorandum.